# COAL RUN COAL COMPANY

## v.

## LESTER H. STRAWN, Adm'r etc.

CARRIER AND SHIPPER—SHIPPER OWNING TRACK.—Appellant operating a coal mine, for convenience in shipping laid and kept in repair a railroad track from its shaft to the railroad, a distance of three quarters of a mile. Appellant did not own or lease any locomotive-engine or rolling stock, but the product of appellant was carried by said railroad company in its own trains, operated by its own employes over this switch and its own and connecting tracks of other railroad companies to appellant's customers or consignees. Appellee's intestate was fatally injured on this switch track by a train of said railroad. Appellee brought suit against appellant for damages. *Held*, that upon the evidence the relation of appellant to the railroad company was not that of master to servant but of shipper to carrier, and appellant is not liable, since it fairly appears that as to the *manner* of operating and managing the train, in all its details, the railroad company acted independently, with its own machinery and by its own servants and under its own charter.

APPEAL from the Circuit Court of La Salle county; the Hon. GEORGE W. STIPP, Judge, presiding.    Opinion filed August 20, 1884.

Mr. E. S. LELAND and Messrs. GILBERT & ECKELS, for appellant; that if A employ B to do any kind of work, B to select, control and discharge the servants engaged in performing the work, such servants not being subject to the orders of A in respect to the details of the work, B is an independent contractor and not A's servant, and B's servants are not A's servants, cited Scammon v. Chicago, 25 Ill. 424; Hale v. Johnson, 80 Ill. 185; West v. St. L., etc., R. R. Co., 63 Ill. 545; Eaton v. European, etc., Ry. Co., 8 Am. R. 430; Joliet v. Harwood, 86 Ill. 110; Milligan v. Wedge, 12 A. & E. 737; Schuler v. Hudson R. R. Co. 38 Barb. (N. Y.) 653; Boswell v. Laird, 8 Cal. 469; 1 Addison on Torts, 46; 2 Greenleaf on Ev. § 232b; Cooley on Torts, 546; Wood on Master and Servant, § 312.

Messrs. BULL & RUGER, for appellee; that even in the case of an independent contractor, if the employer keeps control of the work, he is liable, cited 2 Hilliard on Torts, 447.

The appellant was liable even if the cars and engine that caused Muhlich's death were under the entire and independent control of the railroad company: I. C. R. R. Co. v. Finnigan, 21 Ill. 646; C., St. P. & F. du L. R. R. Co. v. McCarthy, 20 Ill. 388; Hinde v. W. Nav. Co., 15 Ill. 72; C. & R. I. R. R. Co. v. Whipple, 22 Ill. 107; C. & St. L. R. R. Co. v. Woosley, 85 Ill. 370; West v. St. L. V. & T. H. R. R. Co., 63 Ill. 545; P. & R. I. R. R. Co. v. Lane, 83 Ill. 449.

PLEASANTS, P. J.    Appellant, operating a coal mine near Streator, for convenience in shipping laid and kept in repair a railroad track from its shaft to the line of the C. P. & S. W. R. R. Co., a distance of three quarters of a mile or thereabouts.    This track was extended to or connected with other shafts of other mines in the immediate neighborhood; but by whom or upon what arrangement for use, does not appear.

Appellant neither owned nor leased any locomotive-engine or rolling stock. Its product was carried by said railway company in its own trains, operated by its own employes, over this switch and its own and connecting tracks of other railroad companies, to appellant's customers or consignees. The railroad company in like manner served other shafts in the neighborhood to which this switch was extended or with which it was connected.

On the 15th of March, 1880, appellee's intestate, Charles Muhlich, who was then in the employ of appellant, was fatally injured on this switch track by a train of said railroad company consisting of an engine and three empty coal cars. It had been backed up near the shaft, on the lump track, where it had stood a few minutes waiting, for a car that was on the scales to be let down out of its way, to back up further. Deceased was forty or fifty feet west from the rear car, engaged in removing a fish plate, with his face to the west. When the car on the scales had been let down, the signal to back up was given and the train run upon him.

The railroad company was then in the hands of a receiver appointed by the U. S. Circuit Court, and this suit was brought against the coal company to recover damages for the alleged injury.

There are two counts in the declaration. The first avers that the deceased was at work for defendant repairing the track of a railroad owned by and under the control and management of defendant, and that while at work, and using due care, the defendant caused and permitted an engine and train of cars to be run and operated in such a negligent and careless manner that the same ran upon and killed him.

The second is in substance the same, with the further averments that the railroad connected the C. P. & S. W. R. R. with defendant's coal-shaft, that the negligence was gross, reckless and in total disregard of human life, and that the train was not run, operated or managed by a fellow-servant or fellow-servants of the deceased.

Issue was taken by a plea of not guilty and the trial resulted in a verdict for plaintiff for $3,500 damages.

Motions by defendant, at the proper times, to exclude all the evidence for the plaintiff and for a new trial were overruled and judgment entered upon the verdict; from which judgment defendant took this appeal.

The evidence preserved in the bill of exceptions relates almost wholly to the circumstances immediately preceding and attending the unfortunate occurrence. As to the facts bearing upon the question of care or negligence on the part of the deceased and of the persons operating the train, respectively, it is conflicting; and we deem it unnecessary to discuss either the evidence or the instructions relating to that question, because the case must in our judgment be finally disposed of by a proper determination of the one that lies farther back.

It being conceded that the injury was committed by persons in the employ of, and while operating a train belonging to the C. P. & S. W. R. R. Co., an incorporated common carrier by railroad, the plaintiff was bound, in order to establish the liability of defendant therefor, to show that it sustained to said railroad company, at that time, the relation of master.

This was the theory of the declaration. It did not claim that the train was being run under the charter of the defendant and could not have been lawfully run otherwise—the ground of liability recognized in West v. The St. L., V. & T. H. R. R. Co., 63 Ill. 525; nor that defendant employed the railroad company to do the work and that it was necessarily dangerous, however carefully and skillfully done—the ground recognized in the City of Joliet v. Harwood, 86 Ill. 110. If it did it would be entirely unsupported by the evidence. The railroad company was doing its own proper work under its own charter, and the danger was not in the nature of that work, but altogether in the manner of doing it. But it avers that the defendant owning and managing the road caused the train to be run in a manner so careless and negligent as to kill the deceased. This can be sustained only by proof that what is charged was done by servants of the defendant.

No evidence of the terms of the contract between the Coal

Coal Run Coal Company v. Strawn.

Company and the Railroad Company was introduced, and that of other facts showing their relations was very meager.

Miles Cavanaugh says: This railroad was put up by the Coal Run Coal Company for their own private use.

Michael Muhlich, a son of the deceased, says: I know about the branch railroad leading down to the shaft. Should judge the Coal Run Coal Company operates that road, judging from the nature of the time table. I have been acquainted with this road about a year and a half. * * * There are branches leading to other shafts. The Coal Run Coal Company controls the running of traffic over the road.

James Brady says: I' was in the employ of the C. P. & S. W. R. R. Co. as switchman. Downs had charge of the work as switchman or yardmaster. The engineer was working, I suppose, for the C. P. & S. W. R. R. Co., and the fireman as well. The cars belonged to that company and were operated by that company.

Michael Murray says: I was working at the Pea-Nut shaft when he (Muhlich) was killed. I was running empty flats down under the shoot to be loaded, and when they were loaded I took them out. I always threw the switches and run the flats down myself. That was what I was there for.

James Downs testifies: I was then yardmaster for the C. P. & S. W. R. R. Co. My duties were to distribute empty coal cars around to the various coal shafts and pull out the loaded ones, and do such necessary work as the coal shafts demanded when the coal went over our road.

(Question by a juror.) You worked for the C. P. & S. W. R. R. Co., but you still done all the work which was ordered by the Coal Run Co.? (Answer.) We had to take empty cars down to the other shafts there and pull out what went over our road.

(Question by same juror.) If you were ordered to do so you worked for them? (Answer.) I don't know as there was any ordering about it or anything of that kind. At that time the coal shaft shipped all their coal by the C. P. & S. W. R. R., and the Pekin road done their work; put on empties whenever called for and pulled out the dumps. In the morn-

ing the Coal Run Co. used to send word for us to " bring down so many empties," and we would bring them down to the shaft and take them out when loaded.

Upon the foregoing evidence, which is all we find in the record that bears upon it, the question is whether the railroad company was the servant of the Coal Run Company or an independent contractor.

In Arasmith v. Temple, 11 Bradwell, pp. 47–51 inclusive, the difference between these characters and the *indicia* of each, as we understand them from the authorities, were so fully stated that it is unnecessary here to repeat them. We find nothing opposed to them in the briefs of counsel in this case, but on behalf of appellee it is insisted that appellant, " although it did not own the locomotive or cars, controlled the running thereof, directed when and where the several cars upon its railroad should be run or switched, and in all ways controlled the engineer, brakemen, switchmen and cars, as absolutely and completely as any railroad company runs its own trains and controls its own hands." This broad claim ousts the railroad company entirely, and brings the train hands into direct relation with appellant as its servants. If just, it settles the question beyond a doubt. But no attempt is made to support it by argument. It is simply asserted as established by two short sentences above quoted from the testimony of Michael Muhlich and the fact, proved and conceded, that appellant owned the switch track. We think these altogether insufficient.

The witness, when his father was killed, was living in Kansas, and does not pretend to know or to have had any means of " judging"who at that time operated the road. His acquaintance with the road itself did not begin until more than a year afterward. His opinion on that subject, at any time, "judging from the nature of the time table," can hardly be treated as evidence. If the time table was of such a nature as to be a means of judgment, it should have been presented to the jury for theirs, without his opinion; but it was not so presented. If there was one, every presumption from the known circumstances would be that it was fixed by agreement, general or

special, with the railroad company, acting as independently as the coal company, and not without regard to its will. And if not so fixed, it would still be no evidence that the railroad company did not control as *to the manner* of running and operating its trains, which is the real point of inquiry. So of his opinion that " the coal company controls the running of traffic over the road." The meaning of this is by no means clear. Having been laid down for its private convenience and being in no sense a public railroad (Koelle v. Knecht, 99 Ill. 403–4), the coal company, unless restrained by express contract, could undoubtedly take up the rails, refuse permission to the railroad company or any other party to carry anything over it, or anything but its own product, or only so much of anything, and on such terms, as it should see fit. In that sense it controlled the running of traffic over it. But having given permission to this railroad company to carry over it so far and for such purposes as it did, whether by contract or mere license, neither this witness nor any other states a fact tending to prove that appellant had in law or pretended to exercise any control over or interference with the *manner* of running and operating its trains. It handled only coal cars and them only so far as it was necessary in order to load them. On the other hand it fairly appears that as to the manner of operating and managing the train, in all its details, in getting these cars to and from the place where they were loaded, the railroad company acted independently, with its own machinery and by its own servants. All of the train hands were in its employ. Downs, its yardmaster, gave the signal to move the train that ran upon the deceased and its engineer obeyed it, both acting for said company in the performance of its proper, independent, contract work, which was to carry the coal of the appellant.

Upon the facts, then, we find the relation of appellant to the railroad company to have been that of shipper to carrier. If there is a single circumstance which for a moment might seem to distinguish it, as shown in this case, from its purest form, it is that the shipper provided a portion of the carrier's facilities for the performance of its proper work, and a very

important portion, namely, a railroad track for the short distance mentioned. This circumstance, however, does not so distinguish it, even in appearance; for the shipper surrendered this track to the carrier for the time and purpose required, and the latter then had it as fully and exclusively as if it had been its own. We find no evidence that appellant controlled or directed it about its work in any particular, further than all shippers of such freight do and must direct their carriers by rail. Such carriers are not servants of the shipper, but independent contractors, and for injuries resulting from their negligence or that of their servants, the shipper is not liable.

In divers rulings, upon the motions of defendant above referred to and in giving and refusing and modifying instructions not necessary to be here specified, the circuit court proceeded upon views of the law or of its application to the facts which were not in harmony with those herein set forth, and as we think, therein erred, for which the judgment is reversed, and the cause remanded for further proceedings in conformity herewith.

Reversed and remanded.