## Crawford-Adsit Co. v. G. H. Fordyce et al.

1. CHANCERY PRACTICE—*When a Bill is Multifarious.*—A bill is multifarious when it seeks to litigate several claims which are in their nature separate from and have no relation or dependence upon each other.

**Bill for an Injunction.**—Appeal from the Circuit Court of Cook County; the Hon. EDWARD F. DUNNE, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1901. Reversed. Opinion filed February 21, 1902. Rehearing denied March 14, 1902.

This is an appeal from an order granting an injunction. The bill of complaint alleges that orators are non-residents of the State of Illinois, and are engineers in the employ of the Erie Railroad Company. That during the fall and spring of 1898–9 the Crawford-Adsit Co. caused two of its solicitors to call upon the engineers along the line of the Erie Railroad Co., between New York and Chicago, for the purpose of soliciting subscriptions to a book entitled " The Erie Edition of the American Engineer."

That one or the other of said solicitors visited each of orators, and, in order to induce them to subscribe, fraudulently represented that it was necessary for the Crawford-Adsit Co., in order to get out said book, to have a photograph and biographical sketch of each engineer; that said Crawford-Adsit Co. had the sanction of the officers of the Erie Co., as well as their subscriptions, and that said book would contain from 1,000 to 1,500 pages, with one photograph of each engineer, when permitted, on a page; also that the book would be of the finest paper, well bound, and weigh from eighteen to twenty pounds; all of which representations so made by them they knew to be false. And in many instances, in order to induce other of the engineers to subscribe for said book, said agents falsely and fraudulently represented that they had the signature of other engineers along the line of said road.

That said book was to be ready by September 1, 1899, and delivered free of charge, other than the subscription

price.    That the subscription price was $25 to those who had both their photograph and biography therein, and $15 for the biography alone, to be paid for on delivery.

That by means of such false representations said Crawford-Adsit Co., through its said agents, induced several hundred engineers to subscribe for said book, but that said book was not ready for delivery in the fall of 1899, nor did orators hear anything further about said books until the summer or fall of 1900, when word was received that the books were ready for delivery.

That many of orators have not seen said book, nor has the same been tendered to them; that to many of orators the book was sent to collect the charges, together with express charges, and that many of orators have never subscribed for said book; that each of orators have refused to pay for the book.

Orators Drummond, Jaggers, O'Neil, Wilde, Taylor and Amyansen allege their subscription contracts, if any exist, to be forgeries; that they refused to subscribe, and never did subscribe for said book.    That the whereabouts of said solicitors are unknown to orators, and the Crawford-Adsit Company refuse to give their address; and that defendants herein, at the time of the commencements of the suits on the contracts of subscription, knew the contracts were fraudulent.

That the Crawford-Adsit Co. have commenced before M. R. M. Wallace, a justice of the peace in Chicago, an attachment suit against each of orators on said pretended contracts of subscription, on the ground of non-residence, and have garnisheed orators' salaries.    That one E. O. Brutch, claiming to be the secretary of the Crawford-Adsit Co., on April 12, 1901, and May 9, 1901, swore to certain affidavits for attachment, and signed the name of the Crawford-Adsit Co. to certain bonds in attachment in suits before the said Wallace, and caused to be issued and served garnishee proceedings against the Erie Railroad Company, and stopped the payment of the salaries due orators.    Sixty-eight complainants join in and bring this bill.

JOSEPH A. MCINERNEY, attorney for appellant; F. L.
BROOKS, of counsel.

BULKLEY, GRAY & MORE, DAVID S. GEER, ALDEN,
LATHAM & YOUNG and ABBOTT, BUCHHOLZ & ABBOTT, attor-
neys for appellees.

MR. JUSTICE WATERMAN delivered the opinion of the court.

While the rule as to what constitutes multifariousness in
a bill in chancery is of that nature that it is not always
clear whether a bill is demurrable for such reason, it is well
settled that a bill is multifarious when it seeks to litigate
several claims which are in their nature separate from and
have no relation or dependence upon each other. Ryan v.
Trustees of Shawneetown et al., 14 Ill. 20; Burnett et al. v.
Lester, 53 Ill. 325; Whiteside Co. v. Burchell, 31 Ill. 68;
Story's Equity Pleadings, 9th Ed., Secs. 279–279a–280–284–
285–286a–286b–533–534–537, notes; Murray v. Hay, 1 Barb.
Ch. 59.

In the present case it appears that the representations
and promises to the several complainants, as well as the
contracts, were several and distinct. It does not appear
that the representations were by a circular or prospectus,
of which each complainant received a copy, while appar-
ently the representations and promises were made to the
several subscribers at separate times. Nor has one com-
plainant any pecuniary interest in the contract of another.
The interest of each is several and distinct; relief granted
to one will be of no benefit to another.

Six of the complainants deny that they subscribed; it is
manifest that the issue they present is essentially unlike
the case set forth by the others. With those who deny
ever entering into any contract, the only question for trial
is, did they subscribe—not, upon what representations were
they induced to do so.

The bill is therefore clearly multifarious. The case is
unlike that concerning which Mr. Justice McAllister wrote
in 6 Ill. App. 172 (Hickey v. Chicago and Western Indiana
R. R. Co.), the general doctrine of which case upon other

matters, was overruled in Chicago and Western Indiana Ry. Co. v. Dunbar, 100 Ill. 110. See also City of Chicago v. The Chicago & W. I. Ry. Co., 105 Ill. 73–81, and the Chicago & Western Indiana Ry. Co. v. Dunbar, 95 Ill. 571.

The bill seeks to have canceled many separate and independent contracts made by one defendant with the several complainants.

The charges of fraud upon which such cancellation is asked are: That one or the other of said solicitors visited each of orators, and in order to induce them to subscribe fraudulently represented that it was necessary for the Crawford-Adsit Company, in order to get out said book, to have a photograph and biographical sketch of each engineer; that said Crawford-Adsit Company had the sanction of the officers of the Erie Company, as well as their subscriptions, and that said book would contain 1,000 to 1,500 pages, with one photograph of each engineer, when permitted, on a page; also that the book would be of the finest paper, well bound, and weigh from eighteen to twenty pounds; all of which representations so made by them they knew to be false. And in many instances, in order to induce other of the engineers to subscribe for said book, said agents falsely and fraudulently represented that they had the signature of other engineers along the line of said road.

It does not appear that any of the complainants supplied a photograph or biographical sketch, or if any did that he has suffered or will suffer any loss thereby; nor does it appear that harm has come to any one from the statement that defendant "had the sanction of the officers of the Erie Company as well as the subscriptions;" nor does it appear that the promises as to the size, weight and quality of the book have not been kept; while if they are not, as well as if the books are not delivered as promised, free of charge, etc., complainants have a plain, full and adequate remedy at law.

Under Section 22 of Chapter 52 R. S., Sec. 34, page 974, last edition Hurd's Statutes, it would seem that each

defendant has a perfect defense as to the attachment upon proof of the statute of the State in which he resides, and that no more is due him from the Erie Company than is exempt by the law of such State.

The actions sought to be enjoined are each actions in attachment.

It is urged that the defendant is irresponsible.

Section 3 of Chapter 79, page 1119, last edition of Hurd's Statutes, provides for the filing with the justice of a good and sufficient bond, payable to the defendant, with surety to be approved by the justice in a penalty not less than double the amount of the plaintiff's claim, etc.

If this has not been done, each defendant in attachment can compel the giving of such bond with approved surety, or the dismissal of the case. If the surety on any bond already given is not sufficient, each defendant is entitled to a bond such as is required by the statute.

What facts not shown by the bill may exist, we do not know; but certainly the attachment of the wages of so many persons living hundreds of miles outside this State and not shown to have ever been here, does not, without explanation, commend itself to the view of a court of justice. Nevertheless, we can not for such reason extend the arm of a court of equity beyond its legitimate reach.

The order of the Circuit Court is reversed.