## Lewis A. Williams et al. v. William E. Harper et al.

### Gen. No. 13,101.

1. MULTIFARIOUS—*when bill of complaint is.* A bill which by injunction seeks to restrain the enforcement of several distinct and independent contracts made by the defendants with separate and distinct parties is open to the charge of multifariousness.

2. INJUNCTION—*what essential to issuance of, without notice.* In order that an injunction may properly issue without notice it must clearly appear that irreparable injury will result from delay, and this irreparable injury must be shown by facts set up in the bill or the accompanying affidavit.

3. INJUNCTION—*what not sufficient order justifying issuance of writ of.* An indorsement made by the judge upon the bill of complaint is not an order which will authorize the issuance of the writ of injunction: it is a mere memorandum, from which the clerk should enter the essential order.

4. INJUNCTION—*when does not lie.* Relief by injunction cannot

be obtained where a case is not made by the bill from which it can be inferred that the complainant will suffer damage if the act sought to be enjoined is actually done.

5. INJUNCTION BOND—*what condition of, should contain, where. collection of judgment is restrained.* It is reversible error for an injunction to be granted restraining the collection of the judgment without requiring that the bond provide for the payment of the judgment in the event of the failure of the proceeding.

Bill for injunction. Appeal from the Circuit Court of Cook County; the Hon. CHARLES M. WALKER, Judge, presiding. Heard in this court at the March term, 1906. Reversed. Opinion filed July 9, 1906.

**Statement by the Court.** The bill in this case is for an injunction restraining the defendants in the bill from instituting or trying any suits at law or issuing any execution on any judgment on orders, contracts or agreements for or in favor of the defendants and from assigning, selling or otherwise disposing of any such contracts or agreements which defendants hold or have under their control signed by complainants.

A temporary injunction as prayed was granted by the Circuit Court without notice, to reverse which this appeal is prosecuted.

The bill is sworn to, but no reference is made in the affidavit to any cause or reason why the injunction should be issued without notice. The only averment upon this subject appears in the bill charging that execution will be issued forthwith upon a judgment obtained by defendants against complainant, Joseph Tichy, and other suits commenced and other judgments obtained against the other complainants, and that defendants will assign and transfer orders, contracts and agreements with complainants to third parties, if any notice of an application for the injunction prayed is given to defendants or any of them, and that complainants will be irreparably injured if defendants should make such assignments and transfers pending an application for an injunction upon notice.

The bill is filed by ten complainants, all of whom are alumni or graduates of the Northwestern University, who at the solicitation of defendants, doing business as the Uni-

versity Publishing Society of New York, subscribed for a copy of a work to be published in four volumes, entitled "Northwestern University, a history by Arthur Herbert Wilde, Ph.D., Assistant Professor of Arts," which publication was to contain, complainants allege, a full and complete biography of all the subscribers. The subscription price for this publication was $25. Complainants aver that the representation as to inserting a biography of the subscribers in the publication was verbal, that in fact they signed a printed slip, believing that the same contained a promise or guarantee that the work published would be as verbally represented, and that at the same time complainants signed a book in which they appended their names and addresses above which they aver there was no printed matter relating to the history to be published, but that defendants since have caused to be printed above their signatures "an order, contract or agreement for the purchase of said history at the price aforesaid without any mention made of any biographical sketch of themselves."

That defendants have endeavored to deliver the four volume publication aforesaid, which is minus any biographical history of complainants, and to collect therefor the subscription price of $25; that defendants failing to procure either acceptance of, or payment for, said four volume publication, are threatening suits at law against subscribers and have in fact instituted two suits before James C. Martin, a justice of the peace in and for Cook county, against complainants Joseph Tichy and T. B. S. Wallace, in which a judgment for the amount of the subscription price with costs was rendered against Tichy March 5, 1906, and a like result is feared will happen in the suit against Wallace.

The injunctional prayer of the bill is for a temporary injunction restraining defendants in the manner before recited, "until the further order of this court."

The ultimate relief indicated by the bill is to enable complainants "to set forth and establish their rights in the premises, to open the door for the admission of evidence

which will show what the contract or undertaking was between the parties at the time that the signatures of your orators were obtained to said slip, contract or agreement, and that it is only by the admission of such evidence that the rights of your orators can be secured and the fraud of said defendants defeated." Asks that the cause be referred to a master with directions " to examine the parties hereto upon oath and to fully hear your orators' evidence in regard to what was promised and agreed by the defendants at the time they secured your orators' signatures to said contract or agreement * * * that the master find and report to the court the terms of the contract or agreement as made by your orators and the said defendants, and to reform the said slip, contract or agreement which the defendants hold as against your orators and make it conform to the terms, stipulations and agreements made, represented and guaranteed by them in regard to the contents of said history which they were bound to publish, and for which your orators were to pay the sum of $25."

WELLS & KELLY, for appellants.

No appearance for appellees.

MR. JUSTICE HOLDOM delivered the opinion of the court.

It is evident from a reading of the bill in this cause that the injunction has been improvidently granted and ought to be dissolved.

The bill is clearly obnoxious to a general demurrer and such a bill cannot be permitted to serve as the support for an injunctional order dealing with substantial legal rights.

The bill is multifarious in that it seeks to join and deal with interests as a whole which are not joint and which have no such relation to each other as would justify a court of equity in adjudicating upon them in one action. The contracts, the avowed subject-matter of the bill, are separate and distinct contracts and engagements between the defendants and each individual complainant. There is no averment from which even a consort of action can be drawn

or that one contract in any manner rests upon any one of the others, either for its primal or final execution. They are not even contemporaneous in point of time of execution. No one complainant, so far as appears from the averments of the bill, had any knowledge of the dealings of his co-complainants with defendants in the matter of making the contract for subscription or that such contract of subscription had been made, or that a subscription was procured from any one of the complainants in the faith of any existing subscription with any co-complainant. Each seems to have acted in the matter entirely independent of the other.

The injunction should not have been issued without notice.

It is the invariable practice in this state rarely to grant an injunction *ex parte* and without notice and never unless it clearly appears that irreparable injury will result from delay. Phelps v. Foster, 18 Ill. 309; Chicago City Ry. Co. v. Montgomery Ward Co., 76 Ill. App. 536. Before an injunction can be granted without notice, facts must be shown from which the court can see that irreparable injury will or is liable to result. Henderson v. Flanagan, 75 Ill. App. 283; Chicago City Ry. v. Gen. Electric Co., 74 Ill. App. 465.

The subscription contracts of complainants are in no sense negotiable paper, so that no third party by assignment could obtain any greater rights or hold complainants to any enlarged degree of responsibility after assignment than defendants could before. There is no averment that complainant Tichy was the owner of any personal property liable to execution upon final process issuing out of the court of a justice of the peace or that he had property which could be seized under any execution issued upon the judgment obtained by defendants against Tichy before Justice Martin. In these circumstances we are unable to discover how complainants' rights could be injuriously affected by giving defendants notice of their application to the court for an injunctional order.

The injunctional order restrains defendants from issuing an execution on their judgment in Justice Martin's court against Tichy. The injunction bond should have been conditioned for the payment of all moneys and costs due defendants in the judgment in compliance with section 8, chapter 69 R. S. The failure so to do is reversible error. This case falls within the rule announced in Stirlen v. Neustadt, 50 Ill. App. 378. The bond here as in Stirlen v. Neustadt, *supra*, is conditioned only for the payment "of all such costs and damages as shall be awarded  *  *  * in case said injunction is dissolved." This is not in accord with the demand of the statute and is consequently insufficient.

The record fails to disclose any order of injunction entered of record in the Circuit Court. The clerk seems to have issued the writ of injunction in virtue of the following indorsement upon the bill:

"Let the writ of injunction issue as recommended upon Complainant William E. Harper giving bond in the sum of five hundred ($500) dollars.

C. M. W.,<br>J."

The clerk certifies that the foregoing indorsement was made March 19, 1906, by the Honorable Charles M. Walker, one of the judges of the Circuit Court. But for this certificate this court would have no right to take judicial cognizance that the letters "C. M. W., J." was the judicial act of the chancellor ordering the injunction writ. It was, however, the duty of the clerk of the court, with knowledge of this action of the chancellor, to have made the intention of the chancellor effective by entering an order for injunction from that memorandum upon the records of the court. As it is, there is no record in the Circuit Court authorizing the issuing of the writ. In this regard the action of the clerk is irregular. The orders of the court, to be effective, must appear upon the records of the court. Memorandums or minutes of the judge cannot take the place of the record or furnish the foundation for process in

the nature of a writ of injunction. Hughs v. Washington, 65 Ill. 245.

Nowhere does the bill disclose any damage suffered by or threatened complainants by reason of the publication of the history in question without their biography, neither does it appear that either of the complainants furnished defendants with any of their biographies with request to publish, or that defendants ever declined to publish a biography of either of complainants in the history of the Northwestern University. It would seem that the maxim *damnum absque injuria* applies with much force to the case stated in complainants' bill. That the history of that meritorious institution of learning, the Northwestern University, would be less valuable or lack literary tone or interest to the alumni and graduates and the people who might wish to inform themselves about its history because of the lack of the biographies of these complainants is not even fairly inferable from a statement of the environing conditions, and no other complaint than the absence of these biographies is made against the publication from a typographical, literary or artistic standpoint, neither does the bill call in question or challenge the accuracy of the contents of the publication.

It is clear that the bill does not state facts which entitle complainants to relief from their several contracts of subscription in a court of equity. The bill is silent as to any artifice having been practiced by defendants or any one acting for them, upon any of the complainants to induce them to sign the subscription slip or write their names in the subscription book with their addresses, or that there was any reason why they were not able to read that which they signed or to understand the full effect and purport of their acts. No fraud in signing the slip and the book or imposition in this regard is charged in the bill.

Crawford Adsit Co. v. Fordyce, 100 Ill. App. 362, is decisive of the questions here raised as to the multifariousness of the bill and the binding effect of the contracts of

subscription.　The Crawford case (*supra*), like this, is a subscription book case.

For the foregoing reason the interlocutory injunction appealed from is reversed.

*Reversed.*