**Harold Gombi et al., Appellees, v. Taylor Washing Machine Company, Appellant.**

**Gen. No. 9,150.**

Opin-
ion filed February 8, 1937.   Rehearing denied May 7, 1937.

MULCAHY, MURPHY & WALSH, of Chicago, for appellant; MICHAEL F. MULCAHY and ASHLEY GREENE, of Chicago, of counsel.

CHARLES A. O'CONNOR and FRANK REID, JR., both of Aurora, for appellees.

MR. JUSTICE DOVE delivered the opinion of the court.

On January 28, 1936, a complaint was filed in the circuit court of Kane county by Harold Gombi, his wife, Augusta C. Gombi, and 29 other plaintiffs against the Taylor Washing Machine Company, a corporation. Subsequently by leave of court an amended complaint was filed on June 25, 1936. This amended complaint was filed by Harold Gombi, Augusta Gombi and 19 of the other original plaintiffs. It alleged that the defendant was a corporation engaged in the business of

selling washing machines for household use and employs agents in Aurora who engaged in a series of transactions with the plaintiffs during the months of December, 1935, and April, May and June, 1936. The amended complaint further alleged that these agents represented to the plaintiffs that the washing machines which they sold were of superior quality and three-ply enamel; that the wringer was equipped with grease sealed roller bearings on the four ends of the rollers; that the rollers of the wringer were gear driven; that the tub was full porcelain, double vacuum insulated and would not rust; that all the moving parts were fully inclosed; that the gears were bronze and the casters were made of rubber. The amended complaint further averred that the plaintiffs relied upon these representations at the time they ordered washing machines of the defendant sent to their homes for free trial and demonstration; that these representations were knowingly made and were false in that the machines were only painted with one coat of paint; that the wringer had wooden bearings; that only one roller was gear driven; that the tub was of sheet metal, was not insulated and it did rust; that the moving parts were not inclosed and that the gears and casters were steel. The amended complaint further averred that the machines were sent to plaintiffs' homes on trial and without cost to the plaintiffs and that the plaintiffs could return the machines at the end of two weeks without any cost; that the plaintiffs on delivery and on numerous other occasions requested the defendant to take back the machines but the defendant refused to do so. It was further averred that the plaintiffs signed a receipt in order to show that they had machines in their possession; that the agents of the defendant so represented the paper which they signed, but the plaintiffs allege that the said agents folded said paper and concealed the contents thereof

so that the plaintiffs could not read the same when they signed it; that said paper is in fact a conditional sales contract and contained provisions whereby the wages of the purchaser were assigned to the defendant in the event the purchaser fell behind in his payments. The amended complaint further alleged that the defendant represented that the plaintiffs could leave the washing machine in their homes; that salesmen of the defendant would bring customers into the homes of the plaintiffs and demonstrate the machine to them and from each sale that resulted from such demonstration that the plaintiff in whose home it was demonstrated was to be given credit for $5 on the purchase price of the machine. It was further averred that numerous demonstrations were given and sales made therefrom but that the plaintiffs were never given credit as they had been promised. The amended complaint further averred that the defendant stated to the plaintiffs that if they were not satisfied with the machine it would be exchanged for a Voss or Maytag or any other make of washing machine that the plaintiffs desired; that the plaintiffs have expressed their dissatisfaction with the machines and have asked the defendant to replace them with machines of other makes, but the defendant has wrongfully failed and refused so to do. It is further averred that the defendant fraudulently and knowingly changed the price on said alleged agreement entered into with the plaintiffs from $49.50 to $89.50; that the defendant has attached or garnisheed wages of persons who did not sign the alleged agreement and has attached the wages of the plaintiffs from the Lyon Metal Products Company, the Chicago, Burlington and Quincy Railroad Company, the Illinois Bell Telephone Company, the Independent Pneumatic Tool Company, the McCredie Oil Company and from the Consolidated Paper Company. It is further alleged that the defendant has

started many suits in the municipal court of Chicago of which the plaintiffs had no notice and no opportunity to bring to the court's attention the facts as in the complaint alleged; that the defendant has secured judgment against some of the employers above named and some of the employers have paid over cash to the defendant under such judgments; that other of the above named employers are now holding back wages of the plaintiffs under a notice of wage assignment served on them by the defendant and are about to turn such wages over to the defendant unless restrained by this court; that the defendant has threatened to continue to enforce said wage assignment and the plaintiffs fear it will do so unless restrained by the injunction of this court, and that unless the defendant is restrained from continuing with such wage assignment proceedings, the plaintiffs will suffer great and irreparable injury and loss, for which there is no adequate remedy at law. The amended complaint prayed that a writ of injunction issue restraining the defendant from commencing any action in any court upon the alleged contracts signed by the plaintiffs and from proceeding further in any manner under said contracts until the further order of the court; that the defendant be required to account for all moneys received by and paid to it by the plaintiffs and by their employers and that the defendant be required to pay to the plaintiffs whatever amount shall appear to be due them.

This amended complaint was verified by the affidavit of 10 of the plaintiffs which recites that in some instances their wages had been held up and in other instances were being held up under the wage assignments so that the plaintiffs were seriously hampered in buying the necessities of life; that many suits had been started in the municipal court of Chicago on some of these wage assignments, of which the plain-

tiffs had no notice and no opportunity to defend; that in the cases that have been started, court costs, attorney fees and other incidental expenses have been added onto the purchase price designated in these contracts and these charges have been paid by the employers of the plaintiffs and were charged by said employers to the plaintiffs; that affiants are possessed of insufficient property to give bond and are unable to give bond as a condition precedent to the issuance of a writ of injunction. As a part of the amended complaint a copy of a conditional sales contract dated May 16, 1935, is attached. This contract is signed by Leroy Newton and Angeline Newton, two of the plaintiffs, and contains an obligation by them to pay the defendant $89.50. The instrument recites that of this amount $2 has been paid in cash and the balance of $87.50 is to be paid in monthly instalments of $5 each, the first payment to be due on June 15, 1935. The title to the washing machine is reserved to the defendant until the entire amount is paid and underneath the sig natures of these two plaintiffs and the signature of the witness these words appear, ''This washer not on trial.'' Upon the same day that the amended complaint was filed, a preliminary injunction was issued without bond, which restrained the defendant from instituting or commencing any action in any court in this State upon the alleged contracts signed by the plaintiffs and from proceeding further in any manner on said contracts, attachments, garnishments and wage assignments until the further order of the court.

Thereafter the defendant filed its motion to dismiss the amended complaint and to dissolve the temporary injunction and vacate the order directing the same to issue on the grounds that it was issued without bond; that each plaintiff has an adequate remedy at law; that the plaintiffs' causes of action are several and arise out of separate and distinct transactions; that

the allegations of the complaint are vague, indefinite and uncertain; that the separate causes of action cannot legally and properly be consolidated in one complaint and that the alleged facts contained in the amended complaint are insufficient to confer jurisdiction on a court of equity or to warrant the relief sought. This motion to dismiss the amended complaint and to dissolve the temporary injunction was denied and from that part of the order which denied defendant's motion to dissolve the temporary injunction this appeal had been prosecuted.

It is insisted by counsel for appellant that a complaint joining separate and distinct claims of individuals arising out of separate and distinct transactions is multifarious, insufficient to support an order granting a preliminary injunction and that the allegations of the complaint state a cause of action for which there is an adequate remedy.

In *Crawford-Adsit Co. v. Fordyce,* 100 Ill. App. 362, it appeared that the defendant caused two of its solicitors to call upon engineers along the line of the Erie Railroad between New York and Chicago for the purpose of soliciting subscriptions to a book, that one or the other of the solicitors visited the complainants and induced some of them to subscribe for a copy of the book by false and fraudulent representations. Thereafter 68 persons joined in a suit to cancel the several contracts and to enjoin the defendant from prosecuting certain actions in attachment and garnishment which had been instituted. In reversing the order of the circuit court which had granted a preliminary injunction the Appellate Court said: "A bill is multifarious when it seeks to litigate several claims which are in their nature separate from and have no relation or dependence upon each other (citing authorities). In the present case it appears that the representations and promises to the several complainants, as well as

the contracts, were several and distinct. It does not appear that the representations were by a circular or prospectus of which each complainant received a copy, while apparently the representations and promises were made to the several subscribers at separate times. Nor has one complainant any pecuniary interest in the contract of another. The interest of each is several and distinct; relief granted to one will be of no benefit to another. Six of the complainants deny that they subscribed; it is manifest that the issue they present is essentially unlike the case set forth by the others. With those who deny ever entering into any contract, the only question for trial is, did they subscribe, not, upon what representations were they induced to do so. The bill is therefore clearly multifarious.''

*Williams v. Harper*, 127 Ill. App. 619, was a suit by 10 graduates of Northwestern University to reform a contract which they had entered into with the defendants by the terms of which they had each subscribed for a four-volume history of Northwestern University. The bill of complaint averred that the publication was to contain a biography of all the subscribers; that a verbal representation to that effect was made to the complainants by the defendants and that they signed a printed slip believing that it contained the promise and guarantee that the work when published would be as verbally represented, but the bill charged that the defendants caused to be printed above their signatures an order, contract or agreement for the purchase of said history at the price stated without any mention made of any biographical sketch of the complainants. It was further averred that the defendants sought to deliver the history and collect therefor the subscription price; that the complainants refused to accept or pay for the same and thereupon the defendants instituted two suits against two of the complainants, one

of which had gone to judgment in favor of the defendants and it is feared a like result will happen in the other and that other suits are threatened against the other complainants. The circuit court granted a temporary injunction restraining the defendants from instituting any suits at law or issuing any execution upon any judgment which it had recovered and in reversing that order the Appellate Court said: ''The bill is multifarious in that it seeks to join and deal with interests as a whole which are not joint and which have no such relation to each other as would justify a court of equity in adjudicating upon them in one action. The contracts, the avowed subject-matter of the bill, are separate and distinct engagements between the defendants and each individual complainant. There is no averment from which even a consent of action can be drawn or that one contract in any manner rests upon any one of the others, either for its primal or final execution. They are not even contemporaneous in point of time of execution. No one complainant, so far as appears from the averments of the bill, had any knowledge of the dealings of his co-complainants with defendants in the matter of making the contract for subscription or that such contract of subscription had been made, or that a subscription was procured from any one of the complainants in the faith of any existing subscription with any co-complainant. Each seems to have acted in the matter entirely independent of the other.''

Counsel for appellee cite no authorities which state any different rule than that announced by these and other authorities but insist that multifariousness was not one of the grounds set up in appellant's motion to dissolve and therefore it cannot be raised for the first time in this court. In this counsel are in error as the second grounds stated in appellant's motion was that ''plaintiffs' alleged causes of action, if any there be,

arise out of separate and distinct transactions between defendants and each plaintiff respectively: and said separate causes of action cannot legally be consolidated by plaintiffs collectively in one complaint." Counsel for appellees, however, do call our attention to section 23 of the Civil Practice Act, Ill. State Bar Stats. 1935, ch. 110, ¶ 151; Jones Ill. Stats. Ann. 104.023, and insist that the only question for determination is whether, if these appellees had brought separate actions, a common question of law or fact would have arisen. This section provides: "Subject to rules, all persons may join in one action as plaintiffs, in whom any right to relief in respect of or arising out of the same transaction or series of transactions is alleged to exist, whether jointly, severally or in the alternative, where if such persons had brought separate actions any common question of law or fact would arise." In our opinion this provision simply extends equity practice as to joinder of parties and causes of action, to actions at law. It will be noted that this section restricts the joinder of causes of action to actions arising out of the same transaction or series of transactions and which involves a common question of law or fact. As pointed out by counsel for appellant, section 23 of our Practice Act is the same as section 209 of the New York Practice Act and in *Akely v. Kinnicutt*, 238 N. Y. 466, that court had under consideration a complaint where 193 plaintiffs joined in charging that they were defrauded by being induced to purchase stock at a price greater than its value by means of a false prospectus. In the course of its opinion the New York court said: "It is not only necessary to the joinder in one complaint of causes of action under the statute in question that they should involve a common question of law or fact but it is also necessary that they should arise out of the same transaction or series of transactions."

The equity rule prior to the adoption of section 23 of the Practice Act required, as to joinder, that the bill of complaint disclose that the relief to which each plaintiff was entitled arose out of the same transaction or series of transactions and that there should be a common question of fact or law applicable. Section 23 of the Practice Act simply extends this equity rule to actions at law and does not in any way affect the prior holdings of our courts as to multifarious bills. We are not unmindful that section 26 of the Practice Act, Ill. State Bar Stats. 1935, ch. 110, ¶ 154; Jones Ill. Stats. Ann. 104.026, provides that no action shall be defeated by misjoinder or nonjoinder of parties but the objection to this amended complaint is not misjoinder of the parties but multifariousness. In *Hitchcock v. Reynolds,* 278 Ill. App. 559, cited by counsel for appellees, the court sustained judgments rendered in favor of five parties who united as plaintiffs in one suit and who had recovered wages due on separate and distinct contracts and in *Smith v. Courtney,* 281 Ill. App. 530, also cited by appellees, it was held that it was not improper to join as plaintiff five persons who were injured in the same automobile accident, it being pointed out that their respective claims all grew out of the same transaction. Our holding in the instant case is not in conflict with these cases.

What was said of the averments in the bills in *Crawford-Adsit Co. v. Fordyce, supra,* and *Williams v. Harper, supra,* could be said of the amended complaint in the instant case. The representations to the several plaintiffs and the contracts were several and distinct, apparently made at separate times. No plaintiff has any pecuniary interest in the contract of any other plaintiff. Each contract is the separate and distinct agreement of the defendant with each individual plaintiff. While the complaint asks ''for an accounting by defendant of money and merchandise

received by it by reason of said contracts,'' still there are averments in the complaint to the effect that the signatures of the plaintiffs to the contracts were obtained by fraud and circumvention and that the only instrument which any plaintiff executed was a receipt. The allegations of this amended complaint are not as definite and as certain as good pleading requires and it is apparent that the several causes of action of the several plaintiffs arose out of separate and distinct transactions and do not involve any common question of law or fact.

In the instant case the amended complaint averred that the defendant had started many suits in the municipal court of Chicago and prayed for an order restraining defendant from proceeding further on the contracts, attachments, garnishments and wage assignments referred to in the complaint until the further order of the court. The order entered by the chancellor restrained the defendant from proceeding further in any manner on the contracts, garnishments and wage assignments. Sec. 9, par. 3 of the Practice Act, Ill. State Bar Stats. 1935, ch. 110, ¶ 137; Jones Ill. Stats. Ann. 104.009, provides that actions for injunctions to stay proceedings at law shall be brought in the county in which the proceedings at law are had. By the order entered in this case appellant was restrained from proceeding any further with any of these suits then pending in the municipal court of Chicago, which is in Cook county. This suit was brought in Kane county and under the provisions of the Practice Act that portion of the order was erroneous.

Counsel for appellees further argue that the granting of a temporary injunction was a matter of discretion with the trial judge and insist that to have allowed the defendant to proceed in its attachment and garnishment proceedings would not only have deprived

appellees of money which they needed to buy the necessities of life but would have done untold harm and irreparable injury. "It is fundamental," continue counsel in their argument, "that a temporary injunction will issue in cases where fraud, deceit and misrepresentation are alleged, especially where no great inconvenience will result to the defendant and where great harm is likely to come to the plaintiffs. The defendant," they say, "can not possibly be injured by the granting of this temporary injunction as the money is still in the hands of the employers and if it should be determined upon a hearing on the merits that the plaintiffs have no case, the injunction will be dissolved and the money will be turned over to the defendant." It is also fundamental that where there is an adequate remedy at law equity will not take jurisdiction and in the case of *Hinson v. Ralston,* 100 Ill. App. 214, the court said: "Injunctions are not granted because they will do no harm. He who asks for an order of court must show that he is entitled thereto."

The portion of the order appealed from is reversed and the cause is remanded to the circuit court with directions to sustain the motion to dissolve the preliminary injunction and to vacate the order of June 25, 1936, awarding such preliminary injunction.

*Reversed and remanded with directions.*