## THE CITY OF JOLIET

### *v.*

## WILLIAM HARWOOD.

MASTER AND SERVANT — *respondeat superior.* If a city employs a 'person to do work which is intrinsically dangerous, such as the blasting of rock in a street for a sewer, and the contractor uses all due care, and damage results to another from a stone thrown by the blasting, the city will be liable to respond in damages for the injury.

APPEAL from the Circuit Court of Will County ; the Hon. JOSIAH McROBERTS, Judge, presiding.

This is an action by Harwood against the city, brought before a justice of the peace, taken by appeal to the circuit court, and there tried by the court, without a jury. It appeared upon the trial that the city of Joliet let a contract to O'Riley to construct a sewer through certain of its streets, according to certain plans and specifications. The work to be done was such that it was *necessary* to the performance of the contract that the excavation in a part of a principal street should be done by blasting rock. Each side of the street was bounded by houses. By the agreed

state of facts, on which the case was submitted to the circuit court, it appears that the contractors "used all due care, skill, and caution in the discharge of, and the covering of, all blasts discharged in the prosecution of the work; that from, and by means of, a blast in said sewer a stone was thrown against, and struck, a large front glass of a store room in the store building of plaintiff, then owned by plaintiff and situated on said street in said city, and that the glass was thereby broken and rendered worthless; that the blast from which plaintiff was damaged was covered as O'Riley had been in the habit of doing — apparently in a secure and skillful manner, but not so well as to prevent any stone from flying out."

Judgment was given against the city for the value of the glass, and defendant appeals.

Messrs. HOUSE, HAGAR & FLANDERS, for the appellant.

Mr. THOMAS H. HUTCHINS, for the appellee.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

It is insisted that O'Riley, the contractor, is responsible for this injury, and not the city; and this upon the position that where public work is done by an independent contractor, with the city, the doctrine of *respondeat superior* does not apply. Dillon, in his excellent work on Municipal Corporations (sec. 792), says: "Such is the general rule; but it is important to bear in mind that it does not apply where the contract directly requires the performance of work intrinsically dangerous, however skillfully performed. In such case a party authorizing the work is regarded as the author of the mischief resulting from it, whether he does the work himself or lets it out by contract."

In this case the work which the contractor was required by the city to do was intrinsically dangerous, however carefully or skillfully done. The right of recovery in this case does not rest upon a charge of negligence on the part of

the contractor; it rests upon the fact that the city caused work to be done which was intrinsically dangerous — the natural (though not the necessary) consequence of which was the injury to plaintiff's property. In such case the city is responsible. The judgment must be affirmed.

*Judgment affirmed.*

Mr. Justice Scott, dissenting : By ordinance the city of Joliet provided for the construction of a sewer on certain streets within its corporate limits. The work to be done was particularly described, and was to be done under the superintendence of the city surveyor, conformably to drawings and profile made part of the ordinance. The contract for furnishing all the materials and doing all the work necessary to complete the sewer in accordance with the provisions of the ordinance was let to James O'Riley.

The contractor entered upon the performance of his contract, and in constructing the sewer on Jefferson street, in front of a building owned by plaintiff, it became necessary to excavate rock, which had to be done by blasting, in doing which a stone was thrown with such force that it struck and broke a glass in a window of plaintiff's store of the value of $180 ; and it is to recover the damage done to the glass that this suit was brought.

It is admitted the contractor was a competent and skillful man in such work ; that he employed competent and skillful assistants for doing the work ; that in doing it, and making the necessary excavation by blasting, he and his employees exercised all due care, skill, and caution in discharge of and covering all blasts made in the prosecution of the work, and that the blast from which plaintiff's property was damaged was covered as the contractor and his men had been in the habit of doing — apparently in a secure and skillful manner, but not so well as to prevent any stone from flying out.

It will be observed the admitted facts exonerate the city from all blame in letting the contract to an incompetent person ; but, on the contrary, it is conceded both he and

his employees were careful and skillful persons in that department of labor. Hence the single question presented is, whether, under the admitted facts, the city is responsible for the injury to plaintiff's property ; or, to state the question differently, whether that relation existed between the city and the contractor that, upon the doctrine of *respondeat superior*, the corporation could be made answerable for the damages sustained by plaintiff.

The doctrine on this subject, as I find it in the elementary works, is : the principle of *respondeat superior* does not extend to cases of independent contracts, where the party for whom it is being done is not the immediate superior to those guilty of the acts that produce the injury, and has no control over the manner of doing the work. The rule is otherwise where the work is dangerous in itself, no matter how skillfully done. In such cases the party at whose instance the work is undertaken is regarded as the author of the mischief that flows from it, although he may have let the contract to another. Dill. on Mun. Corp., sec. 792 ; Shear. & Redf. on Neg., sec. 142. Cases in this and other courts illustrative of the doctrine are *Scammon* v. *City of Chicago*, 25 Ill. 424 ; *Pfau* v. *Williamson*, 63 Ill. 16 ; *Peck* v. *Mayor*, 8 N. Y. 222 ; *Kelly* v. *Mayor*, 11 N. Y. 432 ; *Blake* v. *Ferris*, 5 N. Y. 48 ; *City of St. Paul* v. *Letz*, 3 Minn. 297.

Applying these general principles to municipal corporations, with respect to the care of streets, the rule established by the cases cited is, that, unless the work is in itself dangerous, such corporations are not liable for injuries to third parties caused by acts of persons doing work upon or in the streets under independent contracts, notwithstanding the corporation may have contracted the work shall be done according to plans adopted, and have reserved a right of supervision and control over the work to the extent of seeing it is done as agreed upon.

Cases in this court declare a city has no more power over its streets than a private individual has over his own land,

and such city, under a plea of public convenience, can not be permitted to exercise that dominion to the injury of the property of another, in a mode that would render an individual liable to damages, without itself becoming responsible. *Nevins* v. *City of Peoria*, 41 Ill. 502 ; *City of Aurora* v. *Reed*, 57 id. 29. But a private individual who contracts with a skillful person to erect a building on his own land, and puts the same in the exclusive charge of the workmen employed, is not answerable for damages to strangers caused by acts of the contractor or his employees. *Scammon* v. *City of Chicago*, *supra*. It does not change the rule, although the owner may have reserved to himself or agent the privilege to see that the contractor does the work according to the plans adopted. The case at bar comes within the rule uniformly observed. All the city did was to project a certain work to be done in the street, over which it has an absolute dominion as an individual has over his lands. A competent and skillful workman was employed, and it was placed in his exclusive charge. That supervision the city reserved over the work was that power it would have had without any express reservation, to see that the work, when finished, conformed to the plans and specifications made part of the contract. That is implied in all contracts, and is usual in relation to all undertakings. As to the manner of doing the work by the contractor, and the selection of his employees, the city had no control whatever, and never claimed to have. It could neither engage nor discharge any workmen. The contractor engaged such assistants as he chose, having care they were careful persons. He was obligated to do the work after certain plans and specifications, and it was the right of the city to insist upon performance. The manner of doing it — so it was skillfully done — was with the contractor. In this regard the city neither had nor assumed to have any control over him. In making blasts in the excavation, the mode of doing it, and making coverings necessary to render the work safe to adjoining property, were all matters within the judgment of the contractor —

who, it is conceded, possessed the requisite skill in such work. That was skilled labor, and any interference by the city surveyor, whose duty was simply to see that the work, when completed, conformed to the plans adopted, would have been regarded as an unwarrantable meddling with duties enjoined upon the contractor, and might have been the cause of most disastrous results. To hold the city liable in such cases would be carrying the doctrine of *respondeat superior* beyond any reason upon which it is founded.

In the case before the court the city was not in any just sense the immediate superior of the persons whose acts caused the injury to plaintiff's property. The workmen engaged were under the immediate direction of the contractor, who was engaged in an independent employment, requiring some peculiar skill in its execution. That skill may not have been possessed by any of the city officers, and the work, requiring a degree of skill in its execution, was appropriately committed to one who had the requisite knowledge.

The relation between the city and the contractor comes within no definition of master and servant, and there is no reason why it should be declared as a matter of law any such relations do exist. Such an assumption rests on a mere fiction with no warrant in the facts. The city is not forbidden by any considerations of public concern from delegating the management of such work as that embraced in the ordinance to careful and skillful persons in that kind of labor. Indeed, it is the better policy, and affords more assurance of safety to property in the vicinity than any other that could be adopted. It may be that on certain kinds of work to be done under public authority — as, the construction of railroads or canals, and from the responsibility for injuries arising in the execution of which, in the very nature of the things to be done, corporations will not be permitted to escape by delegating their powers to others, though entirely competent to do such work — the character of the work and the dangers incident to the continuous use

have given rise to the necessity of such a rule to secure the public safety. But the case in hand does not come within the rule. The work contemplated by the ordinance was not of that character, and there is no just reason why the corporation could not commit the exclusive charge of it to a competent and careful person, as they did.

The case of the *City of Chicago* v. *Joney*, 60 Ill. 383, cited so confidently as maintaining plaintiff's right to recover, is not in conflict with the views here expressed. That case is placed on the distinct ground the contractors were under an immediate control of the city, having power through the Board of Public Works, whose decisions were final, to dismiss any person employed by them, and because there was dependence-serviency in the contractors, on account of their negligence the doctrine of *respondeat superior* was applied. Nor is the case of the *City of Chicago* v. *Dermody*, 61 Ill. 431, an authority for plaintiff's view of the law. In that case the work to be done was the erection of a public building. The city let the contract to a party who was to do the work according to plans and specifications furnished under the immediate surpervision of the Board of Public Works. The principal ground upon which the decision is based is that the Board of Public Works permitted the contractor to deviate from the original plans, which rendered the building less secure, and it was that which caused the injury.

There is nothing in the previous decision that would prevent the court from deciding the case on what I regard as the better reasoning, as well as the weight of authority; and in my opinion the judgment should be reversed.

Mr. JUSTICE SHELDON concurs in the dissenting opinion.