## Ellen M. Harding vs. City of Boston.

Suffolk.    December 13, 1894. — January 4, 1895.

Present: Field, C. J., Allen, Holmes, Knowlton, & Barker, JJ.

*Trespass upon Land — Contract for Construction of Sewer — Independent Contractor — Liability of City.*

A. entered into a written contract with a city for the construction of a sewer, according to plans and specifications which were furnished in advance for the entire work. A. was to do the work with his own men, and to have it done by a certain date. The work was to be done "to the satisfaction and acceptance of the superintendent of sewers, and subject to his inspection and direction at all times"; and the power to him or the inspector in charge of giving directions as to the work in certain particulars was provided for. The contract also provided that "none but citizens of" the city were "to be employed on this work." *Held,* in an action by an abutter against the city for trespass upon his land, that A. was an independent contractor, for the negligence of whose men in doing the work the city was not liable.

A. made a written contract with a city for the construction of a sewer in a certain street. The contract provided that the city should furnish the brick to A. The city accordingly made a contract with B. to supply the brick, which was to be delivered "upon the work on the line of the sewer." B. unloaded the brick on C.'s wharf and carted them across C.'s land, which abutted on the street in question, and delivered them to the city at the place agreed upon. There was no arrangement between B. and any one representing the city that B. should use C.'s wharf or cross his land in delivering the brick. *Held,* in an action by C. against the city for trespass, that the city was not responsible for B.'s acts.

Tort, for trespass upon the plaintiff's land and wharf, with a count in contract. Trial in the Superior Court, before *Bond,* J., who allowed a bill of exceptions, in substance as follows.

The plaintiff introduced evidence tending to show that in the year 1886 the board of aldermen of the defendant city, by an order duly passed, and approved by the mayor on June 28, 1886, laid out a common sewer through Granite Avenue, Adams Street, and Minot Street, which sewer became when constructed the property of the city.

On June 30, 1886, the city entered into a contract for the construction of the sewer with John A. Gill, which contract was introduced in evidence by the plaintiff, and provided, among other things, that the contractor was "to furnish all the materials except as hereafter specified, and do all the work according to the

plans and specifications " set out ; that the excavation was to be made true to the line and grade as given to the contractor, and, if the material was unsuitable for forming the bottom, a further depth was to be excavated " as directed by the superintendent or inspector in charge " ; that only such length of trench was to be opened at once " as directed by the inspector" ; that the earth excavated was " to be compactly placed along the trench, so as to be as little annoyance as possible to abutters, . . . and no obstruction to be placed upon the sidewalks " ; that the trenches and banks were to be kept lighted and fenced as provided in the city ordinances, " and the contractor to be responsible for all damages arising from, or in consequence of, the construction of the sewer " ; that all sewers or drains were to be connected with the work " as directed by the superintendent or inspector " ; that the earth should be removed and the street cleaned up as the work proceeded, " to the satisfaction of the inspector " ; that certain notice should be given by the contractor to any railroad corporation before entering on its location, " and every provision for safety required by them, or by the inspector, must be complied with " ; that certain notice should also be given to any street railway corporation, in crossing or in opening trenches beneath its tracks, and the work performed so as to permit the passage of cars, " unless by special direction of the superintendent " ; and that the work was to be finished by a date named.

The contract also contained the following clauses :

" The work to be kept perfectly clean from dirt, brick-bats, etc., as built, and the whole done to the satisfaction and acceptance of the superintendent of sewers, and subject to his inspection and direction at all times. . . .

" None but citizens of Boston to be employed on this work, and the contractor to whom this contract is awarded must agree to comply with this rule. . . .

" The city will furnish as near the line of the work and in such quantities as practicable all the bricks, cement, pipes, and branches, manhole and catch-basin curbs and covers, and slants."

The work of constructing the sewer was begun soon after the date of the contract.

The plaintiff was in 1886, and at the time of the acts complained of, the lessee of three undivided fifths of a lot of land,

part of which consisted of a wharf adjoining Granite Avenue on the easterly side, being the land described in the declaration, and owner in fee of the remaining two undivided fifths thereof. There was evidence tending to show that, in the course of the construction of the sewer in Granite Avenue in the summer and fall of 1886, large quantities of material excavated from the trench, consisting of rock and gravel, were thrown and deposited on the line of the same by the men at work in the trench. The location of the easterly line of Granite Avenue was in controversy at the trial; but the evidence for the plaintiff tended to show that the material so excavated was thrown upon and also spread beyond said easterly line, as it was claimed by the defendant, to and over some of the plaintiff's land. A portion of the material excavated from the trench was left where it was originally deposited, and was described as forming, at the time of the trial, a pile about fifty feet long in the longest part, and about twenty-five feet wide; originally, it was somewhat larger. There was evidence that large quantities of water were pumped from the sewer trench, which went on to the estate of one Mullen, and ran from there upon land claimed by the plaintiff to be part of her estate, and across that estate to the river; and that bricks used in the construction of the sewer were landed upon the plaintiff's wharf.

Thomas J. Young, called as a witness by the plaintiff, testified that he was superintendent of sewers of the defendant city in 1886; that, in the exercise of his duties as such superintendent under the contract with Gill, he visited the place of the work in Granite Avenue from three to five times a week; that there were officers under him, the chief engineer of the department and two inspectors, and these officers were present, under the terms of the contract, at different times while the work was going on, from July, 1886, to March, 1887; that he saw Gill and his men putting the earth upon the lines of the sewer in the place where they did put it; and that he saw no reason to, and did not, stop them, and did not think that he had any right so to do.

Granite Avenue opposite the plaintiff's land was laid out three rods wide. The sewer trench was a little easterly of the middle line of the street, on the side nearest the plaintiff's land, the westerly side of the street being reserved for travel during the

construction of the sewer.  Young testified further, that Gill might have carted the rubble excavated away from the ditch, and carted it back again, or he might have piled it a great deal higher than he did, covering a smaller space of ground ; that he should think these were all the courses open to him ; that it could not be carted back along the street and deposited on the street ; that there was surplus material deposited on the street then from the part of the sewer which had been completed ; that about four fifths of the material excavated went back into the trench ; that it was a very deep cut there ; and that the material took up nearly all of the street.

In pursuance of the obligations on the part of the defendant under the contract to furnish the brick to the contractor, the city made a contract with the firm of Ham and Carter to furnish a quantity of brick to be delivered upon the work on the line of the sewer, and Ham and Carter unloaded such brick on the plaintiff's wharf and carted them with teams from the wharf across the plaintiff's land to Granite Avenue, and delivered them to the city upon the work on the line of the sewer.  It did not appear that there was any arrangement between Ham and Carter and any one representing the city that Ham and Carter should use the wharf or cross the plaintiff's land in delivering the brick; but it did appear that such use was known to the superintendent of sewers, that no objection was made by him to such use, and that at the time the work on the sewer was commenced he talked with one Pierce about unloading brick on that wharf.  There was evidence that some of the brick landed on the wharf were sold and delivered by Ham and Carter to other parties in the neighborhood.

Upon the foregoing evidence, the judge ruled that the defendant was not liable for the trespasses complained of; and directed the jury to return a verdict for the defendant.  The plaintiff alleged exceptions.

*G. S. Hale & W. Schofield,* for the plaintiff.

*A. J. Bailey & F. E. Hurd,* for the defendant.

ALLEN, J.  The plaintiff's count in contract may be disregarded, there being no evidence to support it; and no question was saved in regard to it.

The count in tort was for trespass upon the plaintiff's land,

consisting of or resulting from acts done by Gill and his men, and by Ham and Carter. The only question is whether there was any evidence to show that the city was responsible for those acts, or for any of them. In our opinion there was not.

Gill was a contractor, and he made a written contract with the city for the construction of certain sewers. The work to be done was settled in advance, and was to be according to plans and specifications which were furnished in advance for the entire work. The work was of a kind which did not necessarily or naturally involve any injury to the plaintiff's land. Such injury was not within the reasonable contemplation of the defendant. The city did not employ the workmen or laborers, and had no power to dismiss them. The contractor was to do the work with his own men, and to have it done by a certain date. The work was to be done to the satisfaction and acceptance of the defendant's agent, and supervision and superintendence were provided for, and the power of giving directions as to the work in certain particulars. These provisions appear to us to go no further than to enable the city to secure the proper performance of the work, and do not show that Gill and his men were servants of the city. *Kelly* v. *New York*, 1 Kernan, 432. *Erie* v. *Caulkins*, 85 Penn. St. 247. *Erie School District* v. *Fuess*, 98 Penn. St. 600. The directions which the superintendent of sewers and the inspector might give were in order that certain results should be accomplished, and did not enable those officers to take the control and direction of Gill's men. Gill was still the contractor, in the responsible charge of his men. Looking at the contract as a whole, we think it clear that he should be regarded as an independent contractor, for the negligence of whose men the city was not responsible.

An examination of the cases cited does not show any decision which appears to be in conflict with this view. Cases have often arisen, in this State and elsewhere, in which the general question has been considered, and in some of them the distinction is rather nice. The relation of master and servant was held to exist in *Linnehan* v. *Rollins*, 137 Mass. 123; *Brooks* v. *Somerville*, 106 Mass. 271; *Brackett* v. *Lubke*, 4 Allen, 138; and *Railroad Co.* v. *Hanning*, 15 Wall. 649; and was held or found not to exist in *Conners* v. *Hennessey*, 112 Mass. 96; *Forsyth* v.

*Hooper*, 11 Allen, 419; *Hilliard* v. *Richardson*, 3 Gray, 349; *Pierrepont* v. *Loveless*, 72 N. Y. 211; *Harrison* v. *Collins*, 86 Penn. St. 153; and *Reedie* v. *London & Northwestern Railway*, 4 Exch. 244. In some cases, other considerations came in, so that the decisions did not rest on the law of master and servant; as, for example, cases where one was under a statutory obligation in respect to the thing to be done, or where the work was intrinsically dangerous, so that in the natural course of things injurious consequences must have been expected to result. Such cases are to be distinguished. *Gray* v. *Pullen*, 5 B. & S. 970. *Bower* v. *Peate*, 1 Q. B. D. 321. *Hole* v. *Sittingbourne & Sheerness Railway*, 6 H. & N. 488. *Hughes* v. *Percival*, 8 App. Cas. 443. *Joliet* v. *Harwood*, 86 Ill. 110. So where, after the acceptance of the completed work, an injury occurs because it was badly done, the owner, having accepted the work, is thenceforth responsible, on the ground, perhaps, that he is maintaining a nuisance. *Sturges* v. *Theological Education Society*, 130 Mass. 414. *Gorham* v. *Gross*, 125 Mass. 232. *Cork* v. *Blossom*, 162 Mass. 330.

The present case is governed by the law so often applied when work has been done through the employment of an independent contractor. The provision in the contract that none but citizens of Boston were to be employed on the work did not give to the city the selection of the laborers in any such sense as to make them its servants.

Nor is the city responsible for the acts of Ham and Carter in leaving brick upon the plaintiff's wharf, or in carting the brick across the plaintiff's land. By their contract with the city, they were to deliver the brick "upon the work on the line of the sewer," and there was no evidence that there was any arrangement between them and any one representing the city that they should use the plaintiff's wharf, or cross her land in delivering the brick. The city is not responsible for their trespass upon the plaintiff's wharf and land.

*Exceptions overruled.*