**S. A. Opal, et al., Appellants, v. Material Service Corporation, Appellee.**

**Gen. No. 46,751.**

First District, First Division.
April 2, 1956.
Rehearing denied April 23, 1956.
Released for publication April 30, 1956.

Loeff & Panter, of Chicago, for appellants; Max Chill, and Norman S. Esserman, both of Chicago, of counsel.

Schradzke, Gould & Rantner, and Lord, Bissel & Brook, of Chicago, for appellee; Benjamin Z. Gould, Gerald Ratner, Stephan A. Milwid, and Richard E. Mueller, all of Chicago, of counsel.

PRESIDING JUSTICE FRIEND delivered the opinion of the court.

This cause, No. 46751, hereinafter referred to as the Opal case, and cause No. 46750, referred to as the Dorsey case, present common questions and issues of law and were heard concurrently in the Circuit Court on similar motions to strike the second amended complaint. Pending the appeals, we here entered an order,

on motion of defendant in the Opal case, consolidating the two causes for hearing and argument. The Circuit Court sustained defendants' motions to dismiss the second amended complaints in both proceedings on the grounds of insufficiency, multifariousness, and misjoinder of parties, and plaintiffs in both cases appeal. This opinion decides only the issues presented in the Opal case, No. 46751.

Four plaintiffs here brought suit against the Material Service Corporation. Count I of the second amended complaint alleges that plaintiffs are residents and owners of homes in the Village of Brookfield; that defendant owns and operates a stone quarry located in Lyons, Illinois; that in the operation thereof defendant has used explosives for the purpose of blasting so that it might more readily effect the removal of rock and other materials in the quarry; that plaintiffs' premises are located in residentially zoned sections of the Village of Brookfield, and that all the residences are close to the quarry of defendant; that these premises, buildings and other improvements were in good substantial condition, intact, rested upon undamaged foundations, safely joined and wholly undamaged in structure until the alleged wrongful acts of defendant, as charged in the complaint, occurred; that defendant, in the blasting of rock or other materials in the quarry, by use of explosives during the past five years, and especially the period during the year prior to the filing of suit, disturbed or shook the strata of stone, shale or earth for great distances, including the land, soil and materials on or under the real estate of plaintiffs, and as a natural consequence violent vibrations were produced in the premises of plaintiffs which, as a proximate result thereof, damaged the property of plaintiffs, and that defendant still continues so to blast in said quarry and to damage their premises; that during the past five years, and especially during the year immediately preceding the filing of suit, defendant fre-

435

quently used and is presently using excessive charges of explosive material and equipment in its quarrying operations, causing thereby tremendous detonations, the effect of which is heard and felt for miles, to the annoyance of plaintiffs and others in the village; that the blasts are of such violent nature that they produce shock, act in effect as an earthquake, and cause buildings to shake and tremble, thereby having caused and still causing material damages to plaintiffs' premises; that during the period prior to suit defendant set off numerous charges of dynamite or other violent explosives and blasted rock or excavated land or soil which caused and produced violent explosions, penetrating the lands of plaintiffs that were naturally and as a result of the explosions transmitted through the earth and other strata and through the air to the lands and properties of the plaintiffs, and resulted in shaking, trembling and displacement of the buildings and structures of the plaintiffs, and caused settling and cracking of the buildings, and other damage; that all the properties of the plaintiffs were within such proximity to the quarry of the defendant that, by reason of the rock strata underlying their homes, the explosions damaged their properties.

The complaint further alleges that plaintiffs at all times exercised ordinary and reasonable care to avoid any loss or damage sustained as a result of defendant's acts but states that defendant failed to use reasonable and ordinary care and was negligent in the operation of its quarry and in the setting off of said explosives, and did carelessly and negligently set off divers dangerous charges of explosives in unreasonable quantities thereof with undue force and violence, and did thereby unreasonably or unnecessarily shake, break, and damage the premises of the respective plaintiffs; that the explosives used in the quarry operations were intrinsically dangerous, and defendant failed to use reason-

able means or methods to prevent violent and dangerous vibrations in the rock strata or subsoil extending from the place of explosion to plaintiffs' premises, whereby the premises were so shaken as to damage the property of plaintiffs, and that the damage was a direct and proximate result of the explosions caused by the actions of defendant.

It is further alleged that defendant detonated explosive material in and about the operation of its quarry in violation of its duty to use, run, maintain and operate the said quarry so as to avoid damage to the property of plaintiffs; that the blasting constituted such an annoyance and harassment of all and sundry persons and property in and about the quarry and surrounding territory as to be a continuous nuisance causing continuous damage to the premises of plaintiffs and constituting a menace to their health; that the blasting creates explosions of magnitude, jarring plaintiffs and their property all hours of the day and night, and causing continuous great disturbing noises and vibrations; that as a result thereof plaintiffs are prevented from enjoying their property, and their residences are rendered unhealthful and less fit for occupancy and are being depreciated in value; that plaintiffs have no adequate remedy at law, and unless defendant is restrained from further continuing its blasting operations so as to constitute a nuisance, the unlawful acts will continue. The prayer of the complaint is for a temporary and permanent injunction, but no temporary injunction was applied for or granted.

Count II of the complaint realleges all matters in Count I and in addition charges that the action of defendant was wilful, that the residences of all the plaintiffs were damaged, and sets forth in figures damages to the respective plaintiffs in amounts varying from $1,000 to $2,500. Count II seeks judgment and

punitive damages in double the amount of actual damages.

Defendant moved to strike and dismiss Count I or, in the alternative, asked for an order requiring plaintiffs to make definite certain portions of Count I for the following reasons: plaintiffs fail to allege a cause of action against defendant; they are unable to state an equitable cause of action, and they have an adequate remedy at law; the complaint is vague and ambiguous and does not contain such information as to reasonably inform defendant of the nature of the claims of the several parties; Count I fails to show what act or acts of negligence on the part of defendant occasioned the alleged damage or injury, and, further, it fails to specify any particular date or time as to when the alleged damage or injury occurred as the result of any particular acts of defendant; Count I contains allegations as to purported responsibility of defendant which are mere conclusions of the pleaders and not ultimate facts upon which relief can be granted; such general allegations do not constitute a plain and concise statement of the pleaders' purported cause of action as required under the Civil Practice Act and the Rules of the Supreme Court; and the allegations contained in paragraphs 5 through 11 of Count I are not averments of ultimate facts, but are, rather, mere conclusions of the pleaders.

Without waiving the right to have Count I of the second amended complaint dismissed without further leave to amend, should the court deny the motion to dismiss, defendant asks in the alternative that, pursuant to the provisions of sections 42 (1) and 45 of the Civil Practice Act [Ill. Rev. Stats. 1955, ch. 110, §§ 42, 45] an order be entered requiring plaintiffs to make more definite and certain Count I in the following particulars: (1) the exact date or dates, if any, when defendant is alleged to have performed any of the acts complained of in paragraphs 5 through 11 of Count I; (2) the date

or dates, if any, when the first damage occurred; (3) a statement of the proximity to the quarry of defendant, in miles or fractions thereof, of the premises of each of the plaintiffs; and (4) the manner in which the use of explosives was excessive, specifying the nature of the charges. In their motion to dismiss Count I defendant asked that plaintiffs be given no further leave to amend.

The motion directed to Count II asked that it be dismissed or, in the alternative, that the court enter an order requiring plaintiffs to make definite certain portions of Count II or, in the further alternative, that the multiple causes of action be severed for the following reasons: (1) that Count II is wholly insufficient for failure to state a claim against defendant; (2) that there is a misjoinder of causes of action; it raises no common substantial question of law or fact which would entitle plaintiffs to join their various causes of action; from the face of the complaint it appears that the several plaintiffs claim separate and distinct causes of action for damages alleged to have occurred to the several improvements standing upon the real estate owned by them respectively; (3) that the relief sought by the several plaintiffs does not grow out of the same transaction or series of transactions; (4) that there is a misjoinder of parties plaintiff since the real estate is owned separately, and no common cause of action exists, and each plaintiff is asking for separate and distinct damages which are alleged to be due them severally and not jointly, or not jointly and severally; (5) that the complaint is vague and ambiguous and does not reasonably inform defendant of the nature of the several claims of the parties plaintiff; (6) that it seeks to recover punitive damages without alleging any basis in law or in fact therefor; that Count II makes general allegations as to the purported responsibility of defendant which are mere conclusions of the pleaders and not ultimate facts upon which relief can be

granted; that such general allegations do not constitute a plain and concise statement of the pleaders' cause of action, and are not in conformity with the Civil Practice Act and the Rules of the Illinois Supreme Court; and (7) that Count II fails to set forth what act or acts of negligence on the part of defendant occasioned the alleged damage or injury to the several plaintiffs, and fails to specify the dates or times as to when these damages occurred.

The motion to dismiss Count II also seeks, in the alternative, that, pursuant to sections 42 (1) and 45 of the Civil Practice Act, an order be entered requiring plaintiffs to make more definite their said Count II in particulars similar to those set out in defendant's motion with respect to Count I.

Accompanying the motion to dismiss Count II was a request by defendant that the several causes of action be severed since, as they state, the issues will be hopelessly confused in the minds of the jurors because of the numerous parties and causes of action joined together; no economy or convenience is effected by the consolidation of the several parties and the several causes of action; the several properties of plaintiffs and the alleged damages to their properties are wholly different in nature, in location and in extent; the acts complained of are wholly different and were occasioned at various distances from the location of the several properties of the plaintiffs at wholly different times; defendant believes no jury can allot each item of the testimony to its relevant issue, confining such testimony to that issue, and keeping the issues separate so as to render an intelligent verdict; a great number of parties and issues joined increases the possibility of error which would delay the final disposition of the action and increase the expense of litigation; almost every witness will testify to the claim of one plaintiff only, and would have no logical relevancy to the claims of the others, yet the cumulative effect of the irrelevant

440

testimony would be highly prejudicial to defendant; and plaintiffs are not suing to enforce a common right since their respective interests are personal. Defendant sought the dismissal of Count II or, in the alternative, asked that an order be entered requiring plaintiffs to make the count more definite and certain, or, as a further alternative, that the multiple causes of action be severed.

■ Aside from charges of misjoinder of parties and multifariousness, which will be discussed later in this and the Dorsey opinion, defendant's motion to dismiss both counts of the amended complaint is predicated on plaintiffs' failure to state a cause of action, on the vagueness and indefiniteness of the complaint, on plaintiffs' failure to show specific acts of negligence such as the exact time or dates when damage occurred, their failure to equate the damage with specific explosions, to state the precise place where and the periods when the blastings were set off, the amount of explosive material used, and the condition of the subsoil when the blasts took place. This data is, for the most part, contained within the records of defendant and is peculiarly within its knowledge; under fundamental rules of pleadings, plaintiffs are not required to allege facts which are, to a much greater degree of exactitude, within the knowledge of defendant rather than of plaintiffs.

All the essential allegations for injunctive relief are contained in Count I. It alleges that plaintiffs are residents and owners of buildings located close to defendant's quarry; that defendant has set off explosive material in connection with the operation of the quarry; that the blasting creates explosions of magnitude jarring plaintiffs and their property at all hours of the day and night and causing great and continuous noises and vibrations of the subsoil; that excessive amounts of explosive material are used; that ordinary care was exercised on the part of plaintiffs, that de-

441

fendant was guilty of general negligence; that the injuries complained of resulted from the blastings and constant explosions, constituting a nuisance; that plaintiffs are prevented from enjoying their property; that they have no adequate remedy at law; and that unless defendant is restrained the unlawful acts will continue.

In Count II the complaint alleges that the damages complained of resulted from a series of explosions. It is not necessary to equate the damage with any specific explosion; indeed, it would be impossible to assess the damage resulting from each particular blast or series of blastings, since the damage may not result until some time subsequent to the blast. Plaintiffs would not be likely to make a record of the incidence of blastings, nor would they be in a position to know the precise place where the blastings were set off, the amount of explosive material used, or the exact periods when the blastings occurred; neither would plaintiffs know the condition of the subsoil where the blastings took place. The allegations of the amended complaint afford sufficient basis for injunctive relief and damages and should be answered.

Under the order consolidating this cause with the Dorsey case for hearing and oral argument and granting defendant leave to file a single brief for our consideration on both appeals, defendant treats the two proceedings as one. It is urged that the amended complaints were multifarious because the claims are asserted against various defendants who are in no way interrelated with respect to the claims against their co-defendants. Of course this contention has no application to the instant proceeding, since here Material Service Corporation is the sole defendant. Charges of multifariousness by reason of the misjoinder of four defendants in the Dorsey case will be considered separately and discussed in that opinion.

This leads to a consideration of the charge of misjoinder of plaintiffs. Sections 23, 24 and 44 of the

Civil Practice Act (Ill. Rev. Stat. 1953, ch. 110) outline the rules governing joinder of parties and claims. Recent amendments of these sections do not affect the questions presented. An exhaustive discussion of the construction of these sections of the statute, with citation of cases, is found in 43 Ill. L. Rev. (1948–49) page 41 et seq. Section 44 permits unlimited joinder of claims, both legal and equitable, by plaintiffs, and of counterclaims, both legal and equitable, by defendants; and it vests in the trial court discretion to order separate trials for such issues as may not be disposed of equitably or conveniently in one trial. Although section 44 does not specifically so provide, construction of similar statutes by courts of other jurisdictions, and subsequent decisions in this state, indicate that when there are multiple parties plaintiff or defendant, joinder of claims must meet the limitations of sections 23 and 24. These three sections were taken, with modifications, from the New York Civil Practice Act and the English rules of practice. For a discussion of the British and New York cases, see McCaskill, Illinois Civil Practice Act Annotated (1933), 41, 47 and 107; there is also a helpful discussion of the British precedents in Payne v. British Time Recorder Co., 2 K. B. 1, 124 L. T. 719, 90 L. J. K. B. 445 (1921), which recognized that Order XVI, dealing with joinder of parties, also dealt with joinder of causes of action. That the three sections should be construed together appears to be the view of the Illinois courts: Trapp v. Gordon, 366 Ill. 102; Baker v. S. A. Healy Co., 302 Ill. App. 634; Weigend v. Hulsh, 315 Ill. App. 116.

Under section 23 only those plaintiffs may join whose claims (1) arise out of the same transaction or series of transactions, and (2) involve any common question of law or fact. Section 24, which deals with joinder of defendants, likewise includes the same transaction or series-of-transactions clause, but omits the common question of law or fact requirement. Courts of other

jurisdictions, however, have construed similar provisions so as to make the common-question clause in the section concerning joinder of plaintiffs applicable to the joinder of defendants. Payne v. British Time Recorder Co., 2 K. B. 1, 124 L. T. 719, 90 L. J. K. B. 445; Great Northern Telegraph Co. v. Yokohama Specie Bank, 297 N. Y. 135, 76 N.E.2d 117 (which contains an extensive discussion of cases). While the question has apparently not been decided in Illinois, this appears to have been the construction given in Trapp v. Gordon, 366 Ill. 102, and People for Use of Jones v. Leviton, 327 Ill. App. 309.

██ Both sections 23 and 24 confer upon the trial court discretion to order separate trials and otherwise to protect the parties from injustice or unnecessary expense. Misjoinder does not carry with it the penalties attached to it by the common law, for section 26 provides: "No action shall be defeated by non-joinder or mis-joinder of parties," and Illinois courts have generally followed the rule that dismissal of the complaint for misjoinder of parties or claims is improper. Hitchcock v. Reynolds, 278 Ill. App. 559; People v. Shetler, 318 Ill. App. 279; People for Use of Jones v. Leviton, 327 Ill. App. 309.

The author of "Comments" in 43 Ill. L. Rev. (p. 41 et seq.) makes the following pertinent observation with respect to the construction of the foregoing sections of the Practice Act: "As indicated by the history of earlier procedural reforms in other jurisdictions, the basic objectives of the above sections of the statute could have been defeated by a narrow and technical interpretation of such clauses as 'transaction or series of transactions' and 'any common question of law or fact,' " and states that this danger has been largely, if not entirely, avoided, as evidenced by several cases discussed in the article.

In Gombi v. Taylor Washing Machine Co., 290 Ill. App. 53, which was decided on the pleadings, twenty-

one plaintiffs joined in a complaint alleging the sale of washing machines of inferior quality to each plaintiff by the fraudulent misrepresentations of defendant's salesmen. The complaint charged that at the time of sales, the salesmen had induced plaintiffs to sign conditional sales contracts which they had been led to believe were nothing more than receipts for the machines, that the machines had been sent on trial, but that defendant had refused to take them back. Plaintiffs asked that the contracts be set aside, that defendant be required to account for the money received, and that it be enjoined from proceeding further in actions at law which had been commenced against various of the plaintiffs. Reversing the trial court, the Appellate Court (Second District) held that section 23, concerning joinder of plaintiffs, was merely declaratory of the earlier rules in equity, and hence that the bill should be dismissed, not for misjoinder of the parties, but for multifariousness. The court found that "the representations to the several plaintiffs and the contracts were several and distinct, apparently made at separate times; [that] no plaintiff has any pecuniary interest in the contract of any other plaintiff; [and that] each contract is the separate and distinct agreement of the defendant with each individual plaintiff."

The opinion in the Gombi case referred to the leading New York case of Akely v. Kinnicutt, 238 N. Y. 466, 144 N. E. 682, without, however, distinguishing the fact situations. In the New York case 193 plaintiffs joined separate and independent causes of action in a complaint alleging that the defendants had fraudulently induced them to purchase stock in a new corporation at prices in excess of its value by means of an intentionally false prospectus upon which plaintiffs had relied. Affirming an order overruling a motion for severance, the New York Court of Appeals held that the complaint satisfied the common question of law or

445

fact requirement of the New York statute since the basic issues were whether defendants had conspired to organize a corporation and float its stock at more than its real value, and whether the prospectus had been circularized in furtherance of this conspiracy. "The separate issues which must be tried in each instance will be in the main whether the plaintiff saw the prospectus or learned of its representations, was influenced thereby and at a certain date bought a certain amount of stock at a certain price in advance of its real value in reliance thereon. While these latter [questions] may equal in number the common ones it seems from the face of the complaint . . . that the trial of them will yield in contentious importance and difficulty to the questions which have been first suggested and that, therefore, this is a case which comes well within the meaning of the statute so far as relates to common questions." As to the same transaction or series-of-transactions requirement, the court held that the transaction out of which each cause of action arose was the purchase of stock, and that successive purchases by the various plaintiffs constituted a series of transactions.

The Akely case can be distinguished from the Gombi case on the grounds that the fraudulent misrepresentations in the former were by means of a written prospectus which could readily be proved by evidence common to all the plaintiffs, whereas in the latter the sales were induced by oral misrepresentations of defendant's salesmen which would present separate questions of law and of fact as to each plaintiff; that, moreover, the pleadings in the New York case, which were more skillfully drafted, specifically spelled out a theory of conspiracy, while the theory behind the Gombi case, that each sale was part of a common design to defraud, was not adequately alleged; and that, as pleaded, the joinder of claims in the Gombi case lacked such a unifying factor as was present in the Akley case. The Gombi

case is one of the few decisions in this jurisdiction giving a narrow construction, and in view of its holding that the suit was laid in the wrong venue and should have been brought in Cook County, where defendant had commenced actions at law against various plaintiffs, its rulings on other issues were dicta.

In Weigend v. Hulsh, 315 Ill. App. 116, an action for damages, this division of the Appellate Court, relying heavily on the Akely case, permitted five plaintiffs to join separate counts against two defendants alleging the inducement of separate sales contracts by means of oral representations in pursuance of a fraudulent conspiracy. In response to a want ad in the newspapers, each plaintiff went individually to defendants' office where, by means of misrepresentations about the quality of and demand for defendants' products, plaintiffs were induced to invest heavily in the products, in return for exclusive sales territories. The agreements were executed independently over a period of about six months. The Weigend and Gombi cases are not easy to reconcile on their facts. Each concerned fraudulent oral misrepresentations and purchases of products of inferior quality. It is true that the Weigend case involved a want ad which demonstrated more plainly that the respective sales to plaintiffs were part of a fraudulent plan of defendants common to each plaintiff; but the want ad was not emphasized by the court and would not appear to be a very significant distinction since it merely induced the plaintiffs to go to defendants' office where the alleged fraud was consummated by separate discussions between defendants and each plaintiff. In passing on the sections of the statute here under consideration, Judge O'Connor, speaking for the court, quoted with approval from the Akely case: " 'The statute is a remedial one in promotion of the purpose in these times so insistent and widespread that the delays and expenses of litigation shall be lessened where possible and as such it is to

be liberally construed. . . . The common issues are basic and would seem to be the ones around which must revolve the greatest struggle and to which must be directed the greatest amount of evidence.' " Under the facts presented in the Weigend case, the court felt that although the claims of the several plaintiffs were legally separate and distinct, inasmuch as they involved common questions and arose from identical or related transactions, their common trial could be had with fairness to the different parties.

Baker v. S. A. Healy Co., 302 Ill. App. 634, decided in the First District of the Appellate Court and heavily relied upon by plaintiffs here, is another type of joinder case. Sixty-two plaintiffs were there permitted to bring claims against a contractor, the Sanitary District, and the City of Chicago for personal injuries and property damage caused by a series of explosions in the course of constructing a sewer, and also claims for damage from soil subsidence caused by the sewer excavations. Overruling an order dismissing the complaint, the reviewing court pointed out that all claims arose from the construction of the same sewer which as to plaintiffs was a single transaction, and that the only substantially separate questions of fact were the amount of damage which the explosions caused to each plaintiff. It was held that if plaintiffs could prove causal connections and damages, their right to recover from defendants under Illinois law did not require a showing of negligence but turned on questions of law common to each plaintiff.

Analysis of the cases discloses the wide play for the court's judgment permitted by the common-question and same-transaction clauses of the statute. Neither phrase has been or can be exactly defined, and whether a court holds that multiple claims involve common questions of law or of fact will depend upon the relative importance which the court attaches to the various issues in a case. The rationale of this question is well

stated in Payne v. British Time Recorder Co., 2 K. B. 1, 124 L. T. 719, 90 L. J. K. B. 445 (1921), as follows: "Broadly speaking, where claims by or against different parties involve, or may involve, a common question of law or fact bearing sufficient importance in proportion to the rest of the action to render it desirable that the whole of the matter should be disposed of at the same time, the Court will allow the joinder of plaintiffs or defendants, subject to its discretion as to how the action should be tried." With some exceptions, Illinois courts have liberally construed permissive joinder. Hitchcock v. Reynolds, 278 Ill. App. 559; Crane v. Railway Express Agency, Inc., 293 Ill. App. 328; Antosz v. Goss Motors, Inc., 378 Ill. 608; and Shelton v. Barry, 328 Ill. App. 497.

Of course the joinder of multiple claims or multiple parties increases the procedural problems of the trial judge. Under the statute he has broad discretion to provide for separate trials and to control the course of litigation. He must consider the questions of trial convenience and of minimal hardship to the parties— always in subordination to the search for the most equitable solution but in connection therewith. A case such as Baker v. S. A. Healy Co., which involves numerous plaintiffs and difficult factual questions as to damages, presents the interesting question whether the court should or could permit one jury to pass on the liability of defendants and one or more different juries to assess the damages of the various plaintiffs. A procedure, assuming that it could be legally employed, of allowing separate trials for different issues, might in some instances afford a more orderly and logical introduction of evidence, with the submission of fewer and simpler questions to the jury, and might also encourage claimants to settle out of court, if liability is established. So far as we know it has not been decided in this state whether the trial judge may set damage questions down for separate trial, but dicta in Schultz

v. Gilbert, 300 Ill. App. 417 (in the Fourth District), and Baker v. S. A. Healy Co., strongly suggest that appellate courts consider that orders for separate trials of separate issues are within the discretion of the trial court. The Supreme Court of Illinois has, without discussion, remanded a case for a partial retrial limited to the assessment of damages. Merrill v. City of Wheaton, 379 Ill. 504; in accord, Novitsky v. Boland, 322 Ill. App. 698, Springer v. Yellow Cab Co., 328 Ill. App. 354. If our interpretation of these cases is correct, and in view of the broad language of the Practice Act, it may well be that when the court has before it an appropriate case for trial of separate issues by separate juries, it will hold such a procedure within the act. Section 92 (1) (e) of the Practice Act [Ill. Rev. Stats. 1955, ch. 110, § 92, subd. (1)(e)] authorizes a reviewing court to remand a case for partial new trial, but nowhere does the act expressly authorize a trial court to provide for separate trials of separate issues in the first instance. We think that authority for such procedure could be implied from the provisions in sections 23, 24, 44 and 51 and from Rule 11 which give the trial court broad discretion to sever causes of action and to control the course of litigation. It has been held in other jurisdictions that a severance of the issues does not violate the constitutional guarantee of trial by jury since the right to jury trial does not require that all issues be decided by the same jury. Gasoline Products Co. v. Champlin Refining Co., 283 U. S. 494; Smyth Sales v. Petroleum Heat & Power Co., 141 F.2d 41; Simmons v. Fish, 210 Mass. 563, 97 N. E. 102; Beaulieu v. Tremblay, 130 Me. 51, 153 Atl. 353.

■ In the light of these decisions we have no hesitancy in holding that it was proper, within the provisions of the Practice Act and the rules enacted pursuant thereto, to join multiple plaintiffs in the amended complaint. As in Baker v. S. A. Healy Co., all the claims in the instant suit arose from the blasting

operations which as to plaintiffs were a single transaction or series of transactions, and the only substantial separate questions of fact were the amounts of damage, if any, which the explosions caused to each plaintiff; also, whether these continued blastings by defendant in this, the Opal case, were of such magnitude as to constitute a nuisance justifying injunctive relief. It does not matter that the damages of each will in all likelihood be different in kind or amount; common questions of fact are presented because of these blasts and concussions, and they lend themselves to a single common trial. The nature of the blasts, their frequencies, the amount of explosives used, the method of blasting employed, the character of the subsoil—all these considerations are common to these plaintiffs—and if on trial it should become necessary to prove negligence on the part of defendant, such proof will likewise involve common questions of fact. The testimony of the witnesses would be common to all plaintiffs except as to the question of damages each plaintiff suffered.

In consonance with these views, the order dismissing the amended complaint in this case will have to be reversed and the cause remanded for trial. Upon trial, the question of liability for damages resulting to property, as well as injunctive relief arising from continued blastings in quarry operations, will undoubtedly have to be considered.

■ The rule in this state as to liability for damages resulting from the use of explosives, was enunciated in the early case of Fitz Simons & Connell Co. v. Braun & Fitts, 94 Ill. App. 533 (1900). Plaintiff there brought suit to recover for damages to a brick building caused, as alleged, by underground blasting done by the corporate defendant in the construction of the tunnel. The trial court refused an instruction to the effect that defendant was not liable if the vibrations or pulsations were not negligently caused, ignored the ques-

451

tion of negligence and gave the following instruction: "The jury are instructed as a matter of law, that a person uses a dangerous explosive at his peril, and that if the use of such explosive causes injury to the property of any other person, the person so using such dangerous explosive is in law liable for the damages so caused." In discussing the propriety of the instruction, the court observed that the authorities of different jurisdictions are not in harmony upon this question, citing New York cases, including the much cited case of Booth v. Rome, W. & O. T. R. Co., 140 N. Y. 267, 35 N. E. 592 (1893), distinguishing between direct injury, as where rocks or other debris are propelled upon the property of another causing injury, and consequential injury, such as is caused by concussion or vibration, which by the shaking of the earth injures property. In the former contingency, recovery was permitted on the theory of trespass; in the latter, liability for consequential injury was denied unless negligence was shown in the use of the explosive. "But," in the words of the court, "it has been held differently elsewhere," and it went on to point out that in California the doctrine is broadly stated that whenever one uses a violent and dangerous explosive to blast rock, even upon his own premises, if such premises are contiguous to other property which may probably and naturally be thereby injured, such use is sufficient to impose a liability for injury, direct or consequential, irrespective of the degree of skill or care exercised in using the explosive, and cited in connection with that holding the case of Colton v. Onderdonk, 69 Cal. 155, 10 Pac. 395. After reviewing the decisions in various jurisdictions the court said: "We are not put to the necessity of determining, as matter of first impression, between the weight of these conflicting authorities, because in our opinion our own Supreme Court have indicated which doctrine shall govern here," citing City of Joliet v. Harwood, 86 Ill. 110, wherein the question

452

of liability for injury caused by blasting was considered and determined. In commenting on the Harwood case, the court called attention to the fact that the injury was not consequential, since there was an actual invasion of the property of plaintiff, but said that "the principle upon which the recovery there is justified is announced broadly and without any distinction between injuries caused by substances thrown against the property, i. e., actual invasion, and injuries caused by the concussion or vibration of earth or air, which might be regarded as consequential only." The Harwood decision, the court pointed out, was cited with approval in Village of Jefferson v. Chapman, 127 Ill. 438, Chicago Economic Fuel Gas Co. v. Myers, 168 Ill. 139, and followed by the Illinois Appellate Court in Capital Elec. Co. v. Hauswald, 78 Ill. App. 359. "The doctrine thus established and approved," the court continued, "has apparently the support of logic and natural justice. It would seem absurd that any refinement of reasoning as to nuisance per se or as to injury, consequential or by physical invasion, should be permitted to obstruct the natural justice of a rule which would make one who chooses for his own convenience or profit to use agencies which in their probable and natural results will injure the property of others, answerable for the loss occasioned by such injuries. Nor are authorities wanting which, by analogy at least, support the doctrine." The court quotes with approval from Wood on Nuisances (2d Ed.), Sec. 128, as follows: " 'The usual question is whether the injury resulted from some act done outside the property injured, and is the natural and probable consequence of the act or thing complained of. If so, it is a nuisance, however lawful in itself, and however high a degree of care or skill may have been exercised to prevent the injury.' " It discussed the case of Harding v. City of Boston, 163 Mass. 14, 39 N. E. 411, stating that the Supreme Court of Massachusetts held that under the facts of that case

the city was not liable for a trespass upon the land of plaintiff, because the city had let the work to one who stood as an independent contractor and who was alone liable for the wrong. In distinguishing between that case and cases where the work is intrinsically dangerous, so that in the natural course of things injurious consequences must be expected to result, the Massachusetts court cited the decision of the Supreme Court of Illinois in the Harwood case. The Fitz Simons case also discussed Bradford Glycerine Co. v. St. Marys Woolen Mfg. Co., 60 Ohio St. 560, 54 N. E. 528, which had to do with an injury resulting from an explosion by concussion or vibration, i. e., consequential injury, and quoted with approval the Ohio court's holding that " 'when the owner of a stone quarry, by blasting with gunpowder, destroys the buildings of an adjoining landowner, it is no defense to show that ordinary care was exercised in the manner in which the quarry was worked.' " The Illinois Appellate Court also cited City of Tiffin v. McCormack, 34 Ohio St. 638; Cahill v. Eastman, 18 Minn. 324 (Gil. 292) ; and Mears v. Dole, 135 Mass. 508. After this extensive review of authorities, the Fitz Simons case stated that while the earlier decisions in New York and New Jersey distinguish between injury by trespass and that resulting from concussion or vibration only, and hold that no liability can be imputed in the latter class of cases except where specific negligence is shown in the method of use, the courts of Massachusetts, Ohio, California, Minnesota and Illinois disregard any such distinction and hold to a liability for injuries whether direct or consequential if they are the probable and natural result of the use of a dangerous agency.

When the Fitz Simons case reached the Supreme Court of Illinois on appeal (Fitz Simons & Connell Co. v. Braun, 199 Ill. 390), that court cited, discussed and approved some of the cases reviewed by the Appellate Court, including those in California, Ohio and

Massachusetts and said that "though the law as to the liability arising in such instances does not seem to have been harmoniously declared in the courts of the different States to which we have referred, the rule in this jurisdiction was indicated by this court in the case of City of Joliet v. Harwood, 86 Ill. 110." In passing on the propriety of the instruction in the Fitz Simons case as enunciating the rule of liability in this state, the Supreme Court said: "We need not set forth in full the instructions with relation to the liability of the appellant [defendant] company for any injury or damage resulting from the use of dynamite. They announced, in substance, the proposition that one who makes use of an explosive in the ground near the property of another, when the natural and probable, though not the inevitable, result of the explosion is injury to such property of the other, is liable for the resulting injury, however high a degree of care or skill may have been exercised in making use of the explosive." It unequivocally placed Illinois in the majority group when it said: "If one who, for his own purposes and profit, undertakes to perform a work, by means of explosives, inherently dangerous to the property of another, should be held liable for an injury occasioned by any substance cast by the explosives on the property of such other, it is only by the merest subtility of reasoning he should be held not liable to respond for equal or greater damage caused by the concussion of the air or of the earth. There is no ground of substantial or practical distinction," and with respect to the instruction to the jury so stating the law, the court concluded: "The doctrine of the charge to the jury we think correct." The Fitz Simons case was followed in Baker v. S. A. Healy, 302 Ill. App. 634; the courts of this state have never departed from the doctrine enunciated in the Fitz Simons case, and it has been cited with approval in various jurisdictions. Hickey v. McCabe & Bihler, 30 R. I. 346, 75 Atl. 404. See also Baier v. Glen Alden

Coal Co., 131 Pa. Super. 309, 200 Atl. 190, aff'd 332 Pa. 561, 3 A.2d 349 (concussion damage discussed as trespass); Richard v. Kaufman, 47 F. Supp. 337 (damage from vibrations rather than from propulsion of debris does not make the trespass any the less direct).

A respectable minority of jurisdictions has adopted the New York rule, but it is rejected by most of the American courts which hold the entrepreneur to liability for the damage resulting from his blasting operations whether occurring through trespass or concussion. The authorities holding with the majority rule, with citations, including the Fitz Simons case, which is relied on in Baker v. S. A. Healy Co., 302 Ill. App. 634, will be found in 40 Illinois Law Review 280 (1945–46) under footnote 9. The minority rule has been criticized by numerous writers for its illogical approach to the problem and the unscientific distinction it insists on making between direct and consequential injury. Prosser, Torts (1941) 79; Smith, Reasonable Use of One's Own Property as Justification for Damage to a Neighbor (1917), 17 Columbia L. Rev. 383; Smith, Liability for Substantial Physical Damage to Land by Blasting (1920), 33 Harvard L. Rev. 542, 667.

Through the Booth case (1893), the New York courts established an exceedingly flexible and usable rule which has been utilized to favor builders in numerous instances. In Dixon v. New York Trap Rock Corp., 293 N. Y. 509, 58 N.E.2d 517 (1944), the court restates the rule of the Booth case as "a precise exception" to the principle that "the safety of property generally is superior in right to a particular use of a single piece of property by its owner." The problem confronting the court was the re-evaluation of the public need for building against the preservation of individual property rights. By retaining the Booth case as an exception, the court indicates its unwillingness to abandon its builders entirely to what is con-

456

sidered the too rigid rule of other jurisdictions. The court in the Booth case foresaw clearly the practical results of the imposition of liability without negligence, and created a rule to meet the need. Its policy is too deeply imbedded in the jurisprudence of that state to be discarded, but by relegating it to the position of a mere exception, the court has increased the protection of the individual property owner of that jurisdiction. It would seem that the Dixon case but reflects the change in attitude which has taken place during the intervening fifty years. At the time of the decision in the Booth case, the country as a whole was willing, to some degree at least, to protect the enterpriser at the expense of his neighbor. By moderating the builder's liability to the neighboring property owner, a stimulus was given to building during the years when such development was of paramount concern to all. This trend is reversing itself today as the social group manifests increasing concern for the welfare of its individual members.

It is apparent from the blasting cases that the courts recognize that any rule which is to govern adequately the rights of adjacent landowners in the use of their property must compromise their conflicting interests. The New York court has recognized this too, but did not fashion its rule in terms of the basic rights and duties of adjoining owners as determined by economic needs, justice between the parties, and prevention of future harms. Instead, it has achieved its ends by adhering to the arbitrary distinction between trespass and concussion. Now, although the court still retains its rule, it has reduced it to the narrow limits of an exception.

In 1931 the Circuit Court of Appeals for the Second Circuit decided an action in tort (Exner v. Sherman Power Const. Co., 54 F.2d 510) brought by plaintiff to recover damages to her person, property, and business which were caused by the explosion of dynamite kept

by the defendant company in connection with work upon a hydroelectric development in which it was engaged. In sustaining plaintiff's cause of action, the court said that the liability of defendant was not founded on illegal storage or on negligence, which was not proved, but upon the ground that the use of dynamite is so dangerous that it ought to be at the owner's risk. After an extensive consideration of authorities (many of which have been alluded to in this opinion, and including Fitz Simons & Connell Co. v. Braun, 199 Ill. 390) and pointing out the distinction drawn by some jurisdictions between direct and consequential damages, and the requirement in the latter type of damages of proving negligence (in New York as in the frequently cited case of Booth v. Rome, W. & O. T. R. Co., 140 N. Y. 267, 35 N. E. 592 (1893), and also in New Jersey, Alabama, Kentucky and Kansas), Justice Augustus N. Hand, speaking for the court, made the following comment: "It is true that some courts have distinguished between liability for a common-law trespass, occasioned by blasting, which projects rocks or debris upon the property or the person of the plaintiff, and liability for so-called consequential damages arising from concussion, and have denied liability for the latter where the blasting itself was conducted at a lawful time and place and with due care." The characterization of the Illinois Supreme Court in the Fitz Simons case that such a distinction can.be made only by the merest subtlety of reasoning echoes in Justice Hand's continuing comment: "Yet in every practical sense there can be no difference between a blasting which projects rocks in such a way as to injure persons or property and a blasting which, by creating a sudden vacuum, shatters buildings or knocks down people. In each case, a force is applied by means of an element likely to do serious damage if it explodes. The distinction is based on historical differences between the actions of trespass and case and, in our opinion, is with-

out logical basis." The court then went on to cite jurisdictions in which such doctrine had been rejected— California, Illinois, Iowa, Montana, Ohio, Rhode Island, South Dakota, Washington. The court further said: "We can see no reason for imposing a different liability for the results of an explosion, whether the dynamite explodes when stored or when employed in blasting. To be sure there is a greater likelihood of damage from blasting than from storage, but in each case the explosion arises from an act connected with a business conducted for profit and fraught with substantial risk and possibility of the gravest consequences. As Justice Holmes has said in The Common Law, p. 154: 'The possibility of a great danger has the same effect as the probability of a less one, and the law throws the risk of the venture on the person who introduces the peril into the community.' . . . If damage is inflicted, there ordinarily is liability, in the absence of excuse. When, as here, the defendant, though without fault, has engaged in the perilous activity of storing large quantities of a dangerous explosive for use in his business, we think there is no justification for relieving it of liability, and that the owner of the business, rather than a third person who has no relation to the explosion, other than that of injury, should bear the loss. The blasting cases seem to afford ample analogies and to justify this conclusion."

In the case of Benton v. Kernan, 127 N. J. Eq. 434, 13 Atl.2d 825, the New Jersey court in 1940, which had earlier followed the New York decisions, had before it a situation where forty-eight complainants, residents in the Village of South Orange, owners of their homes, brought suit to restrain the defendants from operating a quarry and a plant manufacturing a road-surfacing product in such a manner as to constitute a nuisance. As here, plaintiffs charged that their homes were shaken, jarred and damaged, and their

lives made highly uncomfortable by vibrations caused by the blastings of rock at the quarry; that the blastings cast stones upon the lands of some of them, endangering the safety of the persons thereon; and that their peace and comfort were disturbed and their health affected by the noises occasioned by the blastings, etc. In view of the importance of the case, the size of the record, and the broad issues raised by the bill, as the court observed, the voluminous testimony adduced upon the hearing was set forth at great length. In reviewing the decisions, the court called attention to Blackford v. Heman Construction Co., 132 Mo. App. 157, 112 S. W. 287, which was said to be a case directly in point. The Missouri court enjoined the operation of defendant's quarry, which had resulted in the casting of stones on complainants' property and the jarring and vibrating of buildings. In speaking of the relative rights of the complainants and the defendant quarry, the Missouri court said: "Although defendants have, beyond a doubt, the right to quarry stone on their property, the plaintiff enjoys the right to the undisturbed possession of his home. If these rights conflict, the right to operate the quarry must yield to the latter, which, in the eye of the law, is the more important of the two . . ." As a result of the appeal in the New Jersey court and in consonance with the injunctive relief granted in the Blackford case, as well as similar injunctive relief granted in other jurisdictions, an injunction was issued perpetually restraining defendants, their agents, servants and employees from discharging blasts of dynamite in such a way as to jar or vibrate complainants' buildings, or to cause debris to be thrown upon them, or to cause such noise as would occasion a nuisance, disturbance or annoyance to such complainants. Defendants were allowed until a fixed date to make necessary changes or alterations to their quarry machinery, rock-loading methods and drilling methods to eliminate, if possible, the noise and vibra-

tions complained of, and were permitted to operate the quarry until a fixed date so as to give them an opportunity to find another location to which they could remove the plant, its machinery and equipment, in the event the improvements could not be made.

Defendant here nowhere disputes the rule in Illinois, as enunciated in Fitz Simons & Connell Co. v. Braun and other cases in this state, supporting that doctrine which holds the entrepreneur to liability for damage resulting from blasting whether occurring through trespass or concussion, but it seeks to minimize the effect of these decisions by suggesting "the trend of the courts today [is] to hold that there is no basis for adopting the harsh rule of absolute liability against an industry that in its strict adherence to modern scientific methods has made the handling and use of explosives less dangerous than almost any product of any nature whatsoever"; and it relies on a case decided in Virginia which has adopted the minority rule. We are satisfied, however, that the doctrine enunciated in the Fitz Simons case, followed in Baker v. S. A. Healy, and even earlier stated in the Harwood case, represents the logical approach to the problem and is in accord with the majority rule. The difficulty of reaching an equitable decision as between the rights of plaintiff homeowners and the defendant quarry is thoughtfully resolved in the Missouri case previously discussed: "Although defendants have, beyond a doubt, the right to quarry stone on their property, the plaintiff enjoys the right to the undisturbed possession of his home. If these rights conflict, the right to operate the quarry must yield to the latter, which, in the eye of the law, is the more important of the two . . ." In the light of what we have said, the Illinois doctrine should be applied to the instant proceeding upon trial of the case. See also Winhold v. Finch, 286 Ill. 614, and Millett v. Minnesota Crushed Stone Co., 145 Minn. 475, 177 N. W. 641, 179 N. W. 682.

For the reasons indicated, we are of opinion that the trial court erred in dismissing the amended complaint. Accordingly, its order is reversed and the cause remanded for trial with directions that defendant answer, and for such further proceedings as may be consistent with the views herein expressed.

Order reversed and cause remanded for trial with directions.

NIEMEYER and BURKE, JJ., concur.